**Martin M. KARNAS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

No. 90–312.

United States Court of Veterans Appeals.

Argued Feb. 28, 1991.

Decided June 11, 1991.

Hearing En Banc Ordered Nov. 22, 1991.

Stephanie Forester, with whom Barton F. Stichman, Washington, D.C., was on the brief, for appellant.

Michael R. Smalls, Capitol Heights, Md., with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Associate Judges.

KRAMER, Associate Judge:

In its decision of September 13, 1989, the Board of Veterans' Appeals (BVA) denied appellant's claim for a restoration of his previous 100–percent service-connected disability rating for schizophrenia from his present 70–percent rating for the same illness. In so doing, the BVA made reversible errors of both fact and law. The deci-

sion of the BVA is reversed and the case is remanded to it with instructions to proceed in a manner consistent with this opinion.

## I.

### BACKGROUND

Appellant served on active duty with the United States Army from May 1967 to December 1968. On January 20, 1975, the appellant, seeking disability compensation, was examined by a Veterans' Administration (now the Department of Veterans Affairs) (VA) psychiatrist, Dr. Abraham Leff, who diagnosed him as having severe schizophrenia. As a result of this examination, on February 21, 1975, the appellant was awarded a 70–percent service-connected disability rating for schizophrenia retroactive to July 19, 1972. On July 24, 1978, this rating was increased to 100–percent for the same disability.

On May 5, 1982, appellant underwent a periodic reexamination by the VA. Dr. Jerrold Terdiman diagnosed him as having chronic schizophrenia-affective type, and his 100–percent rating was continued. On June 7, 1984, Dr. Terdiman reexamined appellant and confirmed the 1982 evaluation. Appellant's 100–percent rating remained intact. On July 2, 1986, appellant reported for yet another VA reexamination, and in a report dated July 3, 1986, Dr. Terdiman found appellant to be suffering from chronic schizophrenia-paranoid type and recorded:

> [The veteran] insists that he is asymptomatic at this time. He states that he receives no psychiatric treatment. [T]here have been no recent psychiatric hospitalizations. [He] has not worked at all for the past seven years. He avoids social situations. He denies perceptual distortions. [He] states that he has no goal directed activities. He is 39 years old, divorced [with] three children. [He] is alert and well oriented. He is tense [and] anxious. [His] affect is constricted. [His] mood is depressed. Paranoid ideation is expressed. [His] memory is intact. [His] insight is absent. [His] judgment is adequate for rating purposes.

R. at 20. As a consequence of this examination, on September 2, 1986, the VA Regional Office (RO) issued a rating decision lowering appellant's rating for service-connected schizophrenia from 100–percent to 70–percent and stated:

> Based on 7/3/86 examination, it is determined that the veteran's nervous condition has improved. Reduction to 70% is warranted. . . .

R. at 21.

Appellant appealed this action and, in support of his appeal, requested a VA examination which was performed on March 5, 1987, by Dr. Terdiman who continued his diagnosis of schizophrenia-paranoid type and observed:

> [T]he veteran's mental condition has not improved since his previous examination in 198[6]. His speech is rambling and circumstantial. He was extremely ambivalent about discussing his mental distress. He was anxious, irritable and depressed. Paranoid persecutory ideation was quite evident [and] affect is constricted. . . .

R. at 25–26. As a result of Dr. Terdiman's report, the RO upgraded appellant's 70–percent rating to 100 percent retroactive to September 2, 1986. R. at 27.

Finally, on October 4, 1988, appellant was required by the VA to undergo another reexamination where Dr. Terdiman repeated his previous diagnosis and the RO summarized his observations in its rating decision as follows:

> [T]he veteran describes symptoms of persistent depression and anxiety and it is noted that he has ideas of reference which cause him to avoid social contacts. He has difficulty in concentration [and] has not worked since 1975. He lives alone. The veteran is alert and well oriented and tense and anxious with a flat affect. His mood is depressed and paranoid persecutory ideation is prominent. He has ideas of reference. Insight is poor and judgment is adequate.

R. at 33. Based on this one examination, the RO reduced appellant's rating to 70–percent, concluding that "evidence indicates that the veteran's nervous condition has improved and a 70% evaluation shall be assigned effective 2/1/89." *Id.*

On December 12, 1988, appellant filed his Notice of Disagreement with this rating action and appealed the decision to the BVA. On September 13, 1989, it affirmed the rating reduction and concluded:

> The veteran currently has a rating for his service-connected paranoid schizophrenia which contemplates a severe impairment of social and industrial adaptability. The evidence of record also indicates that the veteran does not receive any current treatment and has not been recently hospitalized. Current medical findings indicate that he is alert and well oriented. He is tense and anxious with a flat affect and a depressed mood. He exhibits prominent paranoid persecutory ideation and ideas of reference. His memory is intact. These current manifestations of schizophrenia are not of such an extent, severity, depth or persistence to produce complete social and industrial inadaptab[i]lity as required by the schedular criteria.

> With respect to the provisions of 38 C.F.R. 3.343 and 3.344, we point out that the veteran has not received psychiatric treatment and has not been hospitalized for schizophrenia for years. The fact that the paranoid schizophrenia is still active is a factor for consideration, but does not bar an adjustment in the veteran's disability rating where sustained and material improvement is otherwise demonstrated. Although the veteran has not been employed since 1975, psychotic manifestations of such extent and severity as to result in complete social and industrial inadaptability are not demonstrated. Sustained improvement is indicated.

> . . . .

> 4. The evidence of record demonstrates sustained improvement in the veteran's psychosis, and the evidence makes it reasonably certain that the improvement has been obtained and will be maintained under the ordinary conditions of life.

*Martin M. Karnas*, loc. no. 923325, at 5–6 (BVA Sept. 13, 1989). Appellant subsequently perfected an appeal to this Court.

## II.

## ANALYSIS

### A.

Schizophrenia is rated under 38 C.F.R. § 4.132, Diagnostic Code 9210 (1990) (DC 9210), which distinguishes between 100–percent and 70–percent disabilities as follows:

100–percent:

> Active psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce total social and industrial inadaptability.

70–percent:

> With lesser symptomatology such as to produce severe impairment of social and industrial adaptability. . . .

38 C.F.R. § 3.343(a) (1990) generally addresses any reduction in total disability ratings and states in relevant part:

> a) *General.* Total disability ratings ... will not be reduced ... without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of the record, and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest. . . .

The VA, in reducing the total disability rating in this case, failed to document, through an examination as required by § 3.343(a), that the claimant had materially improved, based on the record and under the ordinary conditions of life, from the date of the last examination—and not, as the VA argues, from the date of the examination on which the claimant was first awarded total disability. A comparison of the last examination report of October 4, 1988, which is the basis of the reduction here, with the next-to-the-last examination report of March 3, 1987, which was the basis for appellant's retroactive upgrading to a 100–percent disability rating, shows no indication of any improvement, either mate-

rial or otherwise. On the contrary, these two evaluations demonstrate virtually no change in appellant's condition. R. at 2–3, 10, 15, 20–21, 25–26, 29–34. Both examinations make the same diagnosis of schizophrenia-paranoid type and stress "paranoid persecutory ideation" and "depressed mood." R. at 25–26, 29–34. Most importantly, both examination reports show no improvement in either the appellant's "social and industrial inadaptability" within the context of DC 9210 or "while working or actively seeking work" within the framework of 38 C.F.R. § 3.343(a) (1990).

■ The BVA determined, without evidentiary support, that there was material improvement in his mental condition. *Martin M. Karnas*, loc. no. 923325, at 5–6 (BVA Sept. 13, 1989). This finding is clearly erroneous. In defining clearly erroneous, the Court has stated:

> The Supreme Court has defined the "clearly erroneous" standard as follows: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed".... If the [factfinder]'s account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). Here, because there is no evidence to support the BVA determination, it is obvious that a mistake has been committed, the finding is not plausible, there can be only one permissible view of the evidence, and, thus, the finding is clearly erroneous.

**B.**

38 C.F.R. § 4.16(c) (1990), which deals with total disability ratings for compensation based on unemployability of the individual veteran, specifies:

> [Where] the only compensable service-connected disability is a mental disorder assigned a *70 percent evaluation, and such mental disorder precludes a veteran from securing or following a substantially gainful occupation ... the mental disorder shall be assigned a 100 percent schedular evaluation under the appropriate diagnostic code.*

(Emphasis added.) This regulation, which has no predecessor, became effective March 1, 1989, after appellant filed his appeal with the BVA but before it rendered its decision. (In passing, the Court queries whether there is any significant difference between the standard set out in § 4.16(c), "inability to secure or follow substantially gainful employment", and the 100–percent rating criteria found in DC 9210, "total social and industrial inadaptability"; and, if not, whether indeed § 4.16(c) has any real efficacy. This query arises because 38 C.F.R. § 4.129 (1990) specifies that "social inadaptability is to be evaluated only as it affects industrial adaptability.")

When the law controlling an issue changes after a claim has been filed or reopened but before the administrative or judicial review process has been concluded, the question arises as to which law now governs. The Court turns, for guidance, to four contemporary Supreme Court decisions on this subject, all of which involve a governmental entity as, at least, one of the parties. In 1969, the Supreme Court in *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), resolved a contested eviction in a tenant's favor against a public landlord by retroactively applying a regulation (adopted while the case was on appeal to the Supreme Court, two and a half years after the eviction action was commenced) which offered procedural due process protection to the tenant and held that an appellate court must apply the law in effect at the time it renders its decision. Although

not analyzed as such, the new regulation that the Court chose to apply worked to the benefit of the private party appellant and against the government appellee. Then, in 1974, the Court, by again applying a new law retroactively to the benefit of the private party and the detriment of a government entity, permitted the private party to recover additional attorney fees (over those already awarded under the equity powers of the trial court) in a school desegregation suit against a public school system. *See Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In *Bradley*, the relevant change in law had not occurred until eleven years after the suit had begun and while it was pending on appeal. The Court stated:

> We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision unless to do so would work manifest injustice or there is statutory direction or legislative history to the contrary.

*Id.* at 711, 94 S.Ct. at 2016. To gauge whether such an injustice will occur, the Court considered and weighed the following factors:

1. The nature and identity of the parties.
2. The nature of their rights.
3. The nature of the impact of the change in the law on those rights.

*Id.* at 717, 94 S.Ct. at 2019.

In evaluating the above elements, the Court focused on disparity in the parties' respective abilities to present and protect their interests, whether a party will be deprived of a matured and unconditional right, and whether a "new and unanticipated obligation will be imposed upon a party without notice and opportunity to be heard." *Id.* at 718–21, 94 S.Ct. at 2019–21. In arriving at its conclusion, the Court reasoned that because (1) the plaintiffs were a class of school children seeking their constitutional right to a non-discriminatory education, (2) the school board had no matured and unconditional right to the funds supplied by taxpayers, and (3) the school board, which was already subject to pay-

ment of attorney fees under the equity powers of a court, had no new and unanticipated obligation foisted upon it, there was no manifest injustice in retrospectively applying the change in the law against the defendant. As in *Thorpe*, while again unstated, the Court applied the new law beneficial to private party appellants.

Later, the Court refused to apply a 1978 change in the law retroactively where to do so would have permitted a state government to avoid repayment to the United States Department of Education of 1970–72 grant funds which had been allocated within the state incorrectly under the old law but not under the new law. The Court ruled in *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), that "absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants." *Id.* at 641, 105 S.Ct. at 1561. In *Bennett*, unlike *Thorpe* and *Bradley*, no private party was involved. The Court expressly found that the *Bradley* criterion of infringement upon a matured and unconditional right was met in *Bennett*. *Id.* at 639–41, 105 S.Ct. at 1559–61. Finally, in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court prohibited the Secretary of Health and Human Services from retroactively applying a 1984 cost-reimbursement regulation to recoup moneys previously reimbursed to a private Medicare service provider. In deciding that such a regulation ought to be applied prospectively only, the Court stated that statutes, regulations, and rules are not to be made retroactive unless Congress has expressly permitted retrospective application. *Id.* at 208–09, 109 S.Ct. at 471–72. As in *Thorpe* and *Bradley*, and although again unstated, the Court applied the law that was most favorable to the private party appellant.

■ If the above cases are read together for purposes of considering appeals to this Court (which all, except *Bennett*, involve private party appellants and the United

States Government as the appellee), where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should and we so hold will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs (Secretary) to do otherwise and the Secretary did so. This formulation would never result in "manifest injustice" to the United States Government because Congress controls or may permit the Secretary to control which law is to be applied. The rule which we adopt would also comport with the general thrust of the duty-to-assist and benefit-of-the-doubt doctrines embedded in title 38 of the United States Code and Code of Federal Regulations which spring from a general desire to protect and do justice to the veteran who has, often at great personal cost, served our country. *See* 38 U.S.C. § 3007(a), (b) (1988); 38 C.F.R. §§ 3.102, 3.103 (1990).

■ In applying this rule to the instant case, since 38 C.F.R. § 4.16(c) has no predecessor, became effective after the appellant filed his appeal with the BVA but before it rendered its decision, and does not specify an effective date to begin at a time subsequent to the conclusion of this appeal process, § 4.16(c) applies. Thus, where the only evidence of record shows that appellant has been continually unemployed since 1975, the BVA erred in failing to consider this provision which compels a 100–percent rating for a claimant whose 70–percent service-connected mental disability prevents him from engaging in substantially gainful employment. R. at 2–4, 21, 25–26, 32–33. Even if not raised by appellant, the Court has consistently ruled that the BVA is not free to ignore its own regulations. *See, e.g., Akles v. Derwinski*, 1 Vet.App. 118, 120–121 (1991); *Fugere v. Derwinski*, 1 Vet.App. 103, 108 (1990) (quoting from *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); *Bentley v. Derwinski*, 1 Vet.App. 28, 31 (1990).

## C.

38 C.F.R. § 3.344(a), (c) (1990), titled Stabilization of Disability Evaluations, reads in relevant part:

(a) *Examination reports indicating improvement....* Ratings on account of diseases subject to temporary or episodic improvement, e.g. manic depressions or other psychotic reaction, epilepsy, psychoneurotic reaction, ... *will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated....*

(c) *Disabilities which are likely to improve.* The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more). *They do not apply to disabilities which have not become stabilized and are likely to improve.* Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant reduction in rating.

(Emphasis added.) Under § 3.344(a), (c), the issue presented is whether or not appellant's rating, even though subject to a reduction, may be reduced upon one examination only. Subsection (a) requires that, in the case of diseases subject to temporary improvement (e.g., psychiatric disorders), no finding of improvement will be based on one examination unless all the evidence in the claimant's record shows sustained improvement. (For the reasons already discussed, it is not plausible to conclude that there was sustained improvement in appellant's condition.) However, subsection (c) qualifies subsection (a) by limiting its application to only those veterans whose ratings have continued for five years or more, have stabilized, and are not likely to improve. Since subsection (a) clearly includes mental disorders within its coverage, it is reasonable to infer that the exemption from subsection (a) of "unstabilized disabilities" contained in subsection (c) is confined solely to those service-connected disabilities which have not persisted for at least five years

and are likely to improve. In other words, one could reasonably conclude that, once a disorder, regardless of its nature, has existed for five years or more, it has stabilized and becomes subject to the multiple examination requirement provided in subsection (a). Nevertheless, because of our holdings in II A and B of this opinion, it is not necessary to resolve this issue in the instant case.

### III.

### CONCLUSION

For the reasons stated above, we REVERSE the decision of the BVA and remand it with directions to restore the appellant's 100–percent rating retroactive to the effective date of its reduction.

*It is so ordered.*