**Harold TUCKER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–672.**

United States Court of Veterans Appeals.

Submitted July 2, 1991.

Decided Feb. 18, 1992.

As Amended Feb. 20, 1992.

Edward J. Kowalczyk (non-atty. practitioner) and Andrew H. Marshall (non-atty. practitioner), were on the pleadings, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel,

and David W. Engel, Washington, D.C., were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge, filed the opinion of the Court, in which MANKIN, Associate Judge, joined. STEINBERG, Associate Judge, filed a concurring opinion.

HOLDAWAY, Associate Judge:

Appellant, Harold Tucker, appeals a May 21, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied an increased evaluation for his service-connected chronic bipolar disorder. Appellant filed a motion with the Court for summary reversal, alleging that his total disability rating was reduced without consideration of 38 C.F.R. § 3.343 (1991) and 38 C.F.R. § 3.344(a) (1991) and so was void *ab initio*. We reverse the portion of the BVA decision over which the Court has jurisdiction and remand with directions to reinstate appellant's 50% rating as of October 1, 1989.

This case involves three separate appeals to the BVA of three discrete adjudications that were consolidated in one BVA decision. As to the first two adjudications, the Notices of Disagreement (NOD) were filed before November 18, 1988. Therefore this Court has no jurisdiction to review them. *See* 38 U.S.C. § 7105 (formerly § 4005); Pub.L. No. 100–687, § 402. There was a timely NOD as to the third adjudication, but that NOD cannot be considered an NOD as to the prior separate adjudications. *But cf. Whitt v. Derwinski*, 1 Vet.App. 40, 42–43 (1990) (an NOD filed in response to a later adjudication of the same rating adjudication which was filed after November 18, 1988, is effective to give the Court jurisdiction over a BVA decision on that adjudication). In short, the fact that the three appeals were fortuitously consolidated into one decision cannot give jurisdictional life to adjudications that Congress has forbidden this Court from considering.

In order to put the adjudication over which we do have jurisdiction in proper context, we will briefly outline the history of all three cases that were before the BVA. Appellant was awarded a schedular 100% disability evaluation for his service-connected bipolar disorder in December 1982. The 100% rating was continued until December 1986 when the Veterans' Administration (now Department of Veterans Affairs) (VA) reduced appellant's disability evaluation to 70%. Appellant's rating was further reduced to 50% in April 1987.

Appellant was hospitalized for alcohol detoxification several times between 1987 and 1989. The VA Regional Office (VARO) issued rating decisions in response to the hospitalizations which confirmed appellant's 50% rating for service-connected bipolar disorder.

In April 1989, a VA examination was performed. The examining psychiatrist confirmed the diagnosis of bipolar disorder and stated that appellant's "[v]ocational capacity is moderately impaired, while the social capacity is mildly impaired." As the result of this examination, appellant's rating was reduced by the VARO to 30% in a June 1989 decision which stated:

> Apparently the claims folder was not reviewed by the examiner and the history reported by the veteran is nor [sic] reliable. Since 1986 he has been treated primarily for alcohol dependence with no objective evidence of psychiatric impairment.... The objective evidence on current examination and the veteran's history do not warrant more than a 30% evaluation.

On May 21, 1990, the BVA issued an opinion consolidating all three rating reductions. The Discussion and Evaluation section stated:

> [E]ach succeeding decrease in evaluation was well supported by the medical evidence of record at that time.... At present, the veteran's bipolar disorder is not more than moderately disabling and does not produce more than definite social or industrial inadaptability.

The Board also found that "[t]he schedular criteria for evaluation in excess of 30 percent for chronic bipolar disorder since Octo-

ber 1, 1989 are not met." Appellant filed a timely Notice of Appeal to this Court.

## ANALYSIS

As to the rating decision over which we have jurisdiction (where appellant's 50% rating was reduced to 30%), the rating board was faced with a psychiatric exam where "apparently the claims folder was not reviewed by the examiner." The rating board chose to substitute its own opinion for that of the doctor instead of insisting on correction of the deficiency or an adequate examination. "It is ... essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history." 38 C.F.R. § 4.1 (1991). "If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent on the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1991).

Moreover, we have previously held that BVA panels "must consider only independent medical evidence to support their findings rather than provide their own medical judgment in the guise of a Board opinion." *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1990). "This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court." *Id.* If the Board finds that the medical evidence in the record is not adequate, it must remand for further development. 38 C.F.R. § 19.182 (1991). Because a medical opinion by a Regional Office rating board or hearing officer is not "independent medical evidence" as described in *Colvin* and, therefore, cannot be relied on by a Board panel to support its opinion, much time and effort would be saved if the rating boards insisted on adequate examination results initially rather than leaving the Board panels to do so.

This Court reviews findings of fact under the clearly erroneous standard. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990) ("If there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them."). The BVA's factual finding that appellant's service-connected bipolar disorder produced no more than definite impairment is not plausible based on the *medical* evidence of record and, therefore, is "clearly erroneous."

Accordingly, the May 21, 1990, BVA decision is reversed as to the rating reduction from 50% to 30% and the case is REMANDED with directions to restore appellant's 50% rating for service-connected bipolar disorder as of October 1, 1989.

STEINBERG, Associate Judge, concurring:

I concur in the excellent opinion of the Court. However, I write separately to suggest that there may have been major errors in the Board of Veterans' Appeals (BVA) 1990 decision to affirm the December 1986 Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office (RO) rating decision reducing the appellant's then 100% rating to 70% and to affirm the April 1987 RO rating decision reducing his then 70% rating to 50%. Although the Court cannot at this point reach these adjudications because jurisdictionally valid Notices of Disagreements were not— indeed, could not have been—filed as to them, the BVA decision itself is properly before this Court. 38 U.S.C. §§ 7252, 7266 (formerly §§ 4052, 4066).

VA regulations require that special standards apply to reductions of 100% ratings. *See* 38 C.F.R. §§ 3.343(a), 3.344(a), (c) (1991). These regulations make clear that the requirements for **decrease of** a disability rating for those disabilities which have continued for long periods of time at the same level are more stringent than those for an initial award of disability compensation or an increase in a rating. *See Lehman v. Derwinski,* 1 Vet.App. 339, 342 (1991) (5–year time frame in 38 C.F.R. § 3.344(c) is merely a guideline, not a mandate, in determining whether disabilities have continued "for long periods"); *see also Schafrath v. Derwinski,* 1 Vet.App. 589, 594 (1991); *Karnas v. Derwinski,* 1

Vet.App. 308, 313–314 (1991); *Peyton v. Derwinski*, 1 Vet.App. 282, 286–287 (1991). First, material improvement must be shown. 38 C.F.R. § 3.343(a). Next, the entire record of examinations and the medical-industrial history must be reviewed to determine if the recent examination is as "full and complete" as the examinations on the basis of which previous ratings were authorized or continued; if it is not, it cannot be the basis for a rating reduction. 38 C.F.R. § 3.344(a). Then, if the disability is a disease subject to temporary or episodic improvement, sustained improvement must also be clearly shown or the rating may never be reduced based on only one examination. *Id.*

Material improvement cannot be shown without a comparison of the previous and current physical and mental conditions. *See Karnas*, 1 Vet.App. at 310 (the comparison is between the last examination and the current examination). In addition, once material improvement is found, the VA must further consider the circumstances under which the improvement occurred. First, the improvement must occur under "the ordinary conditions of life". *Ibid.* Specific consideration of a veteran's employment status is required and, if the veteran is not working, whether that is a factor in the improvement. 38 C.F.R. § 3.343(a). If either a "prolonged rest" or a "regimen which precludes work" is responsible for the material improvement, a total rating may not be reduced until after re-examination following a period of employment of at least three months. *Ibid.*

The December 1986 reduction from 100% to 70% stated: "The veteran's symptoms do not support a total evaluation." R. at 182. This conclusion was apparently based only on the medical and psychiatric findings of one VA examination when the veteran was not hospitalized (in August 1986). R. at 173. This seems contrary to 38 C.F.R. § 3.343(a). The April 1987 reduction from 70% to 50% was based on medical reports from "2 periods of hospitalization" (R. at 195) which seems contrary to the provision of 38 C.F.R. § 3.343(a) which requires consideration of whether improvement was attained "under the ordinary conditions of life". Neither regulation section 3.343 nor 3.344 were mentioned or apparently considered in either RO decision or the Board's 1990 decision.

The BVA in affirming these two rating decisions may have committed obvious error under 38 U.S.C. § 7103(c) (formerly § 4003) or clear and unmistakable error under 38 C.F.R. §§ 3.105(a), 3.400(k) (1991) in failing to apply controlling regulations governing the adjudication process in rating reduction cases. *See also* 38 C.F.R. § 19.103(a) (1991) (in consideration of appeals, Board is bound by VA regulations); *Douglas v. Derwinski*, 2 Vet.App. 103, 110 (1992). On remand, the Board may wish to revisit these issues, just as the Court suggested in *Godwin v. Derwinski*, 1 Vet.App. 419, 425–26 (1991), and as the Board did on December 31, 1991, in granting service connection based on obvious error in its prior failure to apply an applicable law and regulation, the benefit-of-the-doubt doctrine in 38 U.S.C. §§ 1154 (formerly § 354), 5107(b) (formerly § 3007). *Wallace B. Godwin*, BVA 90–10507 (Mar. 19, 1990), *readjudicated*, Supp. Dec. at 4–5 (Dec. 31, 1991).