**Orville K. FUTCH, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 91–376.**

United States Court of Veterans Appeals.

Submitted Oct. 8, 1991.

Decided Feb. 19, 1992.

As Amended April 8, 1992.

Rick Surratt (non-attorney practitioner), was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Stephen A. Bergquist, Washington, D.C., were on the brief, for appellee.

Before KRAMER, FARLEY and HOLDAWAY, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant seeks review of a November 2, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied secondary service connection for right axillary/subclavian stenosis. We reverse the BVA decision because it is clearly erroneous and remand to the Board for assignment of a rating. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990) (a finding of fact which is not plausible is clearly erroneous).

## FACTS

Appellant served in the Navy from November 1942 to October 1945. On June 23, 1945, he suffered accidental stab wounds to his right axillary (armpit) area. The treatment he received consisted of compression bandages and rest. After three days, he was discharged from the hospital. The puncture wound was noted on his separation exam only under "History of illness or injury." No defects, other than impaired vision, were noted on the separation exam.

The Record on Appeal shows the Veterans' Administration (now Department of Veterans Affairs) (VA) conducted a medical examination in January 1980. Appellant complained at that time of "chest pain radiating into neck on any exertion...." Apparently, service connection for the stab wound was denied because, in May 1988, appellant reopened his claim for a "[service-connected] rating on residuals of stab wound, right shoulder, 1944." He stated: "I am now getting numbness in [my right] arm." The VA Regional Office (VARO) denied service connection on August 18, 1988, stating: "Service connection is denied for puncture wound of the right axillary region as acute and transitory with no permanent residuals."

In May 1989, appellant filed a Notice of Disagreement, attaching a medical report from a VA doctor with the notation "axillary subclavian artery stenosis (post traumatic) [with] arm claudication." The doctor also noted that appellant had refused an arteriogram. The VARO continued the denial of service connection in June 1989, noting only that appellant had been diagnosed with right subclavian artery stenosis.

Another medical examination was scheduled in August 1989. The diagnosis reported this time was:

Partial stenosis, right axillary artery, secondary to trauma due to stabbing incident with a pair of scissors, with intermittent claudication, right arm, (today that wound would be treated with exploration and the artery repaired and probably would have no side effects. However, in 1945, obviously that was not done. While the artery has healed, there is also about a 40% stenosis according to a recent work-up in Birmingham, Al.); (2) Arteriosclerotic heart disease, status post four myocardial infarctions and congestive heart failure; ...

On September 28, 1989, the VARO again denied service connection stating:

[Rating] Board disagrees with physicians's findings. Medical evidence of record is overwhelming in favor of relationship of right subclavian artery stenosis/right axillary artery stenosis to veteran's generalized arteriosclerotic condition.

The appeal continued and on January 6, 1990, the VARO granted service connection (at a rating of 0%) for the residuals of the puncture wound of the right axillary region but denied service connection for the subclavian and axillary artery stenosis. The reasoning was:

It is noted [that] the examining official has taken the veteran's history of right arm stenosis to be due to the stab wound and that this is based upon the veteran's history. No consideration is apparently given in this opinion to the generalized atherosclerotic state. Outpatient clinicals from [the VA Medical Center], Biloxi, vascular study notes that the veteran has declined any arteriogram which would establish the basis for the stenosis.

In the absence of necessary tests (arteriogram) which would establish the nature of the stenosis, traumatic versus atherosclerotic, the stenosis, this many years removed from the incident of injury would not be reasonably related thereto.

On November 2, 1990, the BVA affirmed the denial of service connection for right axillary/subclavian artery stenosis, secondary to residuals of appellant's service-connected right axillary puncture wound, stating:

In reviewing the post-service evidence we note that right axillary/subclavian artery stenosis was diagnosed in 1989, and that two Department of Veterans Affairs physicians have hypothesized an etiological relationship between this disability and the [service-connected] stab wound.... The veteran was first diagnosed with axillary/subclavian artery stenosis in January 1987 during a doeppler [sic] study for cerebrovascular disease. It was noted at the time that he had *bilateral* subclavian bruits which transmitted up the carotids bilaterally.

This would indicate a disease process in both subclavian vessels, most probably atherosclerotic in nature as judged by his past history of four myocardial infarctions with arteriosclerotic heart disease. In the Board's opinion, other opinions to the contrary, the stenosis in the right subclavian artery is most probably part of a generalized arteriosclerotic process and does not represent residuals of his inservice injury. Many years had elapsed since service before the diagnosis was made. Accordingly, without engaging in unreasonable and unwarranted speculation, we find no reasonable basis to award service connection for right axillary/subclavian artery stenosis, secondary to a right axillary region stab wound.

*Orville K. Futch*, BVA 90–36434 (Nov. 2, 1990) (emphasis in original). The veteran filed a timely appeal to this Court.

## ANALYSIS

This Court reviews findings of fact under the "clearly erroneous" standard. "If there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *See Gilbert*, 1 Vet.App. at 52–53. "BVA panels must consider only independent medical evidence to support their findings rather than provide their own medical judgement in the guise of a Board opinion." *Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991). "[A] medical opinion by a Regional Office rating board ... is not 'independent medical evidence' as described in *Colvin* and, therefore, cannot be relied on by a Board panel to support its opinion." *Tucker v. Derwinski*, 2 Vet.App. 201, 202–03 (1992).

The BVA has explicitly discounted the diagnoses of two VA physicians in this case who have connected appellant's right-arm difficulties to his service-connected injury. The doctor who examined appellant in August 1989 was asked to determine the connection between appellant's vascular problem and the stab wound in service. This doctor took appellant's four prior heart attacks into account as indicated by his diag-

nosis. The only contrary evidence in the Record on Appeal is the VARO rating board's opinion and the Board's own opinion. Those opinions are of no evidential value. Accordingly, the Board's conclusion that "[n]o etiological relationship is demonstrated between the service connected right axillary puncture wound and right axillary/subclavian stenosis first shown many years after the wound," *Futch*, BVA 90–36434, at 4, is contrary to medical evidence of record and is not plausible. The decision is, therefore, clearly erroneous. Accordingly, the decision of the Board is REVERSED, service connection is established for appellant's right axillary/subclavian stenosis, secondary to residuals of his already service-connected right axillary region stab wound, and the case is REMANDED to the BVA to assign a rating.