**Carl S. COLLIER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

**No. 90–882.**

United States Court of Veterans Appeals.

Submitted Oct. 4, 1991.

Decided March 12, 1992.

Carl S. Collier, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Associate Judges.

HOLDAWAY, Associate Judge filed the opinion of the Court, in which NEBEKER, Chief Judge, joined. KRAMER, Associate Judge, filed a concurring opinion.

HOLDAWAY, Associate Judge:

Appellant seeks review of a July 20, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied an increased evaluation for service-connected schizophrenia (from 70% to 100%). We affirm the Board's decision with regard to the denial of an increased schedular rating and remand for consideration of appellant's eligibility for individual unemployability under 38 C.F.R. § 4.16(c) (1991).

Appellant served on active duty between January 1970 and April 1972. In 1977, he reopened his claim for benefits with the Veterans' Administration (now the Department of Veterans Affairs) (VA) after a period of hospitalization. The VA psychiatrist stated: "[T]he patient appears to be totally disabled, unable to work and depended [sic] on relatives." Medication was initially required to control his symptoms. He was rated 100% disabled by service-connected schizophrenia, paranoid type, in 1979 (effective back to his reopened claim date in 1977).

During a 1981 VA reexamination, appellant reported that he had stopped taking his medication. The examining doctor stated:

[A]ppellant's psychotic process seems to be under control at this point.... [H]e does need followup care ... as well as maybe reinstitution of small doses of medications to prevent any further psychotic breaks.... [I]t seems that he could undertake some employment; however, under highly structured and supervised conditions in a job which offers fairly low stress. This would be possible only if he could also, at the same time, be monitored and have close psychiatric followup to determine if the stress is causing any added decompensation.

The VA Regional Office (VARO) continued the 100% rating for service-connected schizophrenia.

In 1984, another VA physician reported: Based on the present [1984] evaluation the appropriate diagnosis appears to be schizophrenia, residual type. His presentation today would seem to indicate severe impairment of both social and industrial adaptability, probably rendering him unemployable.... It is suggested that field social work evaluation be carried out to determine that his impairment and limitation of functioning are as severe as indicated during this interview.

The VARO again continued the 100% rating.

In July 1987, another VA examination was conducted. The examining doctor gave a diagnosis of "schizophrenia-residual type very mild." When appellant was asked why he had no job, the doctor reported that appellant said "[he didn't] feel up to it, [didn't] enjoy working, ... it just worrie[d] him too much." This time, although appellant's 100% rating was continued, the VARO stated that "[38 C.F.R. § ] 3.344 would be applied" and that appellant would be examined again after "awhile." *See* 38 C.F.R. § 3.344 (1991) (Stabilization of Disability Evaluations).

In May 1989, the VARO reduced appellant's rating for schizophrenia to 70% after an examination which revealed that:

[Appellant's] disease process is in remission, but there is still impairment in his activities of daily living and his interpersonal relationships. He can communicate.... He is not taking any ... medication at this time. He should be a candidate for Vocational Rehabilitation or some work program....

In response to the reduced rating, appellant's mother wrote a letter to the VA stating:

Carl has not improved in the last few years. His memory is still very bad.... [H]e can't seem to pay attention long enough to get instructions.... He is very nervous and does not remain in one place for a very long period of time, unless he is asleep. When he is still, not pacing the floor, he is standing and starring [sic]. Sometimes when I am talking to him, I find he has gone to sleep.... He is not able to do any work because he says he is always tired, in addition to not getting the instructions.

The VARO continued the 70% rating in May 1989, stating that "[w]hile [appellant] obviously has a significant handicap, we no longer see it as a totally disabling one."

Appellant filed a Notice of Disagreement and requested a personal hearing. At the hearing, appellant testified that, although he was not seeing a doctor or taking medication for his condition, he had not worked since 1973 because of his nerves. He also testified that, although he occasionally helped his mother out in her restaurant, most of his time was spent at home alone.

The hearing officer continued the 70% rating.

On July 20, 1990, the BVA issued its decision denying an increased evaluation (from 70% to 100%). The Board stated: "According to the doctor's impression, the veteran was a little strange and distant, but his disease process was clearly in remission.... In taking all the evidence as a whole, it does not demonstrate that the veteran's schizophrenic disorder produces total social-industrial inadaptability." *Carl S. Collier*, BVA 90–24993, at 3–4 (July 20, 1990). Appellant filed a timely Notice of Appeal to this Court.

## I.

Under the VA's rating schedule for mental disorders, schizophrenia is rated under 38 C.F.R. § 4.132 (1991). It is considered a psychotic disorder. The General Rating Formula for Psychotic Disorders assigns percentage ratings, in pertinent part, as:

100% Active psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce total social and industrial inadaptability.

70% With lesser symptomatology such as to produce severe impairment of social and industrial adaptability.

38 C.F.R. § 4.132 (1991).

It is clear that the requirements for *decrease* of a disability rating for disabilities which have continued for long periods of time at the same level are more stringent than those for an initial award or an increase in ratings. 38 C.F.R. § 3.343 (1991); 38 C.F.R. § 3.344 (1991). *See Tucker v. Derwinski*, 2 Vet.App. 201, 203–04 (1992) (Steinberg, J., concurring); *Schafrath v. Derwinski*, 1 Vet.App. 589, 594 (1991). The pertinent part of 38 C.F.R. § 3.343(a) (1991) states:

Total disability ratings, when warranted by the severity of the condition ... will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of record, and consideration must be given to whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest, or generally, by following a regimen which precludes work, and if the latter, reduction from total ratings will not be considered pending reexamination after a period of employment (3 to 6 months).

A different standard for reduction applies when the 100% rating is based on individual unemployability. *See* 38 C.F.R. § 3.343(c) (1991).

The second regulation is 38 C.F.R. § 3.344 (1991) which states in part:

(a) *Examination reports indicating improvement.* Rating agencies will handle cases affected by change of medical findings ... so as to produce the greatest degree of stability of disability evaluations consistent with the laws and [VA] regulations.... It is essential that the entire record of examinations and the medical industrial history be reviewed to ascertain whether the recent examination is full and complete.... Examinations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction. Ratings on account of diseases subject to temporary or episodic improvement, e.g. manic depressive ... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.

....

(c) *Disabilities which are likely to improve.* The provisions of paragraph[ ] (a) ... of this section apply to ratings which have continued for long periods at the same level (5 years or more). They do not apply to disabilities which have not stabilized and are likely to improve. Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant reduction in rating.

*See Lehman v. Derwinski,* 1 Vet.App. 339, 342 (1991) (5–year time frame in 38 C.F.R. § 3.344(c) is merely a guideline, not a mandate).

Before a disability rating which has continued for a long period of time can be reduced, material improvement must be shown. 38 C.F.R. § 3.343(a) (1991). "Material improvement cannot be shown without a comparison of the previous and current physical and mental condition." *Tucker,* at 204 (citing *Karnas v. Derwinski,* 1 Vet.App. 308, 310–311 (1991) (the comparison is between the last examination and the current examination)). "Once material improvement is found, the VA must further consider the circumstances under which the improvement occurred." *Tucker,* at 204; 38 C.F.R. § 3.344(a). "[T]he entire record of examinations and the medical-industrial history must be reviewed to determine if the recent examination is as 'full and complete' as the examinations on which previous ratings were authorized or continued; if it is not, it cannot be the basis for a rating reduction." *Id.* "Then, if the disability is a disease subject to temporary or episodic improvement, sustained improvement must also be clearly shown or the rating may never be reduced based on only one examination." *Id.* If the VA has chosen to continue a rating not apparently justified by current symptoms to see if "sustained improvement" is shown under 38 C.F.R. § 3.344(a), unlike the situation in *Karnas,* a comparison between all the examinations prior to such "continuation" and the current examination may be necessary rather than just a comparison between the last examination and the current examination as in *Karnas.* 38 C.F.R. § 3.343(a) (1991).

"Specific consideration of a veteran's employment status is also required and, if the veteran is not working, whether that is a factor in the improvement." *Tucker,* at 204; 38 C.F.R. § 3.343(a) (1991). If either a "prolonged rest" or a "regimen which precludes work" is responsible for the material improvement, a total rating may not be reduced until after reexamination following a period of employment of at least three months. *Id.* This is not to say that a veteran with a 100% rating based on the severity of his underlying disease can avoid any reduction simply by refusing to work. A veteran's work record must be supported by the underlying psychiatric disability picture. 38 C.F.R. § 4.130 (1991). "Ratings are to be assigned which represent the impairment of social and industrial adaptability based on all of the evidence of record." *Id.* The issue of individual unemployability based on a mental disorder is to be handled under 38 C.F.R. § 4.16(c) (1991). *Id.*

Appellant stopped taking medication for his schizophrenia in 1981. Although his 100% disability rating was not reduced until 1989, his symptoms, as recorded in the 1984, 1987, and 1989 examinations show clear improvement from his condition in 1981. Sustained improvement has been demonstrated. The last examination is as "full and complete" as the first and succeeding examinations. The BVA's conclusion that appellant's symptoms produce "severe" impairment (i.e., a 70% rating) of social and industrial adaptability rather than "total" impairment (a 100% rating) is "plausible" and not "clearly erroneous." *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Accordingly, the Board's decision that appellant was entitled to a 70% rating for his service-connected schizophrenia is AFFIRMED.

## II.

◼ When a veteran's only service-connected disability is a mental disorder with a rating of 70%, and such mental disorder precludes a veteran from securing or following a substantially gainful occupation, the mental disorder shall be assigned a 100% schedular evaluation under the appropriate diagnostic code. 38 C.F.R. § 4.16(c) (1991). "The VA's statutory 'duty to assist' must extend [to a] liberal reading to include issues raised in all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). *See also Snow v. Derwinski,* 1 Vet.App. 417, 419 (1991). "There is no requirement in the law that a veteran must specify with precision the statutory

provisions or the corresponding regulations under which he is seeking benefits." *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1990).

Contrary to the assumption of the concurring member of the panel, this Court has not held that the prior version of 38 C.F.R. § 3.327(b)(ii) conferred any substantive right upon a claimant. Both the old and the current versions of the regulation are couched in terms that reveal that the nature of the regulation is to be a guide for the Secretary's subordinates in their use of the Department's medical resources. Neither appears to confer a substantive right. We do not, however, need to reach that issue in deciding this case.

Here, although appellant has not filed the specific form asking for individual unemployability, he has continually stated that he is unable to work due to his schizophrenia. His mother stated the same thing when his rating was reduced in 1989. Neither the VARO or the BVA considered the applicability of 38 C.F.R. § 4.16(c). The proper remedy is a remand for the Board to address this issue. *Snow,* 1 Vet.App. at 419. Accordingly, this case is REMANDED to the BVA to consider the issue of appellant's eligibility for a 100% rating for individual unemployability under 38 C.F.R. § 4.16(c).

KRAMER, Associate Judge, concurring:

Under *Akles v. Derwinski,* 1 Vet.App. 118 (1991), the BVA is to apply all relevant law even though not raised by appellant. Thus, while I agree with the majority that the BVA decision must be remanded for consideration of 38 C.F.R. § 4.16(c), it is also necessary, in the event that appellant is denied a 100% rating under this provision, for the BVA to consider 38 C.F.R. § 3.327(b)(2)(ii) (1990), a regulation that appears relevant to appellant's claim and was in effect at the time of the BVA decision.

38 C.F.R. § 3.327(b)(2) (1990) prohibits a mandatory VA reexamination in the following instance:

(b)(2) *No future examinations will be requested.* In service-connected cases, no reexamination will be scheduled: ... (ii) when the findings and symptoms are shown by examinations ... and hospital reports to have persisted without material improvement for a period of 5 years or more. . . .

If this regulation is applicable in this case, a reexamination, which occurs after a claimant's condition has existed without material improvement for at least five years and which is the basis for his reduction, is unlawful.

However, after the BVA issued its decision, the above regulation was changed, effective December 31, 1990, to read:

(a) *General.* Reexaminations, including periods of hospital observation, will be requested whenever VA determines there is a need to verify either the continued existence or the current severity of a disability. . . . *Paragraphs (b) and (c) of this section provide general guidelines for requesting reexaminations, but shall not be construed as limiting VA's authority to request reexaminations,* or periods of hospital observation, at any time in order to ensure that a disability is accurately rated. . . .

. . . .

(b)(2) No periodic future examinations will be requested. In service-connected cases, no periodic reexamination will be scheduled: ... (ii) when the findings and symptoms are shown by examinations ... and hospital reports to have persisted without material improvement for a period of 5 years or more; . . . .

38 C.F.R. § 3.327(a), (b)(2) (1991) (emphasis added). Clearly the change in subsection (a), which reduces the limitation contained in subsection (b)(2)(ii) of the new regulation to a mere discretionary guideline, would not preclude reexamination even where a service-connected condition has persisted for at least five years without material improvement. If the new regulation is applied to appellant, it would not bar reexamination.

Applying the rule announced in *Karnas v. Derwinski,* 1 Vet.App. 308, 312–313 (1991) (where the law or regulation changes after a claim has been filed or reopened, but before the administrative or judicial appeal process has been concluded,

the version most favorable to appellant will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs to do otherwise and the Secretary did so), to the old and new versions of 38 C.F.R. § 3.327(a), (b)(2). Because there is no expression of intent to apply the new regulation retroactively and because the older regulation provides greater protection to the veteran than the new version, the old version governs this case.

The old version exempts from reexamination any service-connected veteran whose service-connected condition has persisted without material improvement for a period of five years or more. Appellant's award of total disability, based on a 1979 examination, was initially made retroactive to April 14, 1977. A 1984 examination of appellant showed no material improvement and continued appellant's total disability rating. Because appellant, based on these examinations, had no material improvement in his condition for over five years, the examination of February 23, 1989, here the basis for the reduction, appears to be in violation of the regulation.

Under 38 U.S.C. § 7104(a) (formerly § 4004(a)), the VA must follow its own regulations. *See, e.g., Service v. Dulles,* 354 U.S. 363, 387–89, 77 S.Ct. 1152, 1164–65, 1 L.Ed.2d 1403 (1957) (where substantive and procedural regulations governing employee separation from the State Department were not complied with, the termination resulting from such action was unlawful and could not stand); *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990) (where a veteran's existing disability rating was reduced on the basis of a voluntary examination that occurred in violation of an unlawfully rescinded substantive rule that provided procedural protection for the veteran, both the rescission and rating reduction were set aside and his past rating reinstated).

One final matter needs to be addressed. I am aware that it could be postulated, as the majority appears to do without analysis, that subparagraph (d) of the old version of § 3.327 permitted reexamination in this case. Title 38 C.F.R. § 3.327(d) (1990) states:

> The policy as to reexaminations will not be construed as modifying in any way the right of rating agencies to request such additional medical opinions, examinations, or periods of hospital observation as may be necessary to furnish complete evidence on which rating decisions will be based.

However, in order to reconcile § 3.327(d) with § 3.327(b)(2)(ii) and to give effect to both, it seems necessary to interpret § 3.327(d) to allow reexamination only where a claim, *prior to reexamination, is before a rating agency for rating purposes and the agency does not have complete evidence upon which to make its decision.* The VA should be prohibited under subsection (d) of the old version from "fishing" for a rating reduction based on a periodic reexamination conducted as a necessary precursor to a rating decision. Thus, where the veteran's condition has persisted without material improvement for at least five years, the reexamination can be required by the VA only where the matter comes before the rating agency for a rating decision based on evidence independent of such reexamination.