Charles E. WHIPP, Jr., Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary
of Veterans Affairs, Appellee.

No. 91–1260.

United States Court of Veterans Appeals.

Nov. 9, 1992.

454

Before STEINBERG, Associate Judge.

MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, veteran Charles E. Whipp, Jr., appeals from an April 3, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to reimbursement or payment of unauthorized medical expenses incurred as a result of private hospitalization. *Charles E. Whipp, Jr.*, BVA 91–15649 (Apr. 3, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the Secretary's motion will be denied and the Board's decision will be vacated and the matter remanded for readjudication of the appellant's claim.

The veteran served on active duty in the United States Air Force from June 1963 to June 1985. R. at 123. Upon discharge, he was awarded service connection for hypertension, rated as 10% disabling. R. at 43–44. In September 1988, after experiencing recurrent chest pain, the veteran consulted a private physician who recommended further diagnostic testing, including cardiac catheterization. R. at 9. Although the veteran had had a history of chest pain dated back to 1983, Dr. Paul Farrell, a cardiologist who examined the veteran on September 13, 1988, described the change in symptomatology as "rather dramatic" and admitted him to the Baptist Medical Center in Jacksonville, Florida, on September 15, 1988, for evaluation of a possible coronary artery spasm. R. at 83–4. On September 16, Dr. Farrell performed a catheterization of the left and right ventricles with coronary arteriography. R. at 85,

88. Dr. Farrell made a diagnosis of "multilevel coronary obstructive disease with angina pectoris" and recommended surgical revascularization. R. at 106. On the morning of September 19, after experiencing "tight left chest pain", the veteran was placed in the intensive care unit because of "possible acute infarction". R. at 94. Later that day, Dr. J. Kenneth Koster performed a quintuple coronary bypass operation. R. at 106.

On April 4, 1990, a Department of Veterans Affairs (VA) Regional Office (RO) denied the veteran's claim for payment of medical expenses incurred due to his September 1988 hospitalization. The RO concluded that the veteran's treatment was "non-emergent", that VA facilities were available but not utilized, and that private facilities were used in preference to VA facilities. R. at 116.

The BVA decision, dated April 3, 1991, made the following finding of fact:

No medical emergency was present at the time of the veteran's hospitalization at Baptist Medical Center in September 1988[,] ... it is not shown that a delay in seeking VA medical treatment would have been hazardous to the life or health of the veteran, and it is indicated that a VA medical facility was feasibly available to the veteran.

*Whipp*, BVA 91–15649, at 5.

A veteran who seeks reimbursement or payment for medical expenses for treatment of an adjudicated service-connected disability must show both that the care and services were "rendered in a medical emergency of such nature that delay would have been hazardous to life and health" and that "VA or other Federal facilities were not feasibly available, and an attempt to use them beforehand or obtain prior VA authorization for the services required would not have been reasonable, sound, wise, or practicable, or treatment ... would have been refused". 38 C.F.R. § 17.80 (1991); *see* 38 U.S.C. § 1728 (formerly § 628).

In support of his claim, the veteran had submitted a June 1990 statement from Dr. Koster. R. at 130. Dr. Koster stated that he was aware that the "three day delay between catheterization and surgery" had caused "some concern" to the RO because the delay implied the absence of an emergency. He explained that, after the catheterization was performed, "[w]e felt that the pattern of blockages constituted such threating [sic] anatomy that while we didn't nedd [sic] to rush you in to surgery as an emergency that evening, we were not comfortable with the notion of allowing you to leave the hospital". *Ibid.* Dr. Koster also stated his impression that the VA Medical Center was operating with a minimum six-week backlog, and added: "Although this was not the determining factor in keeping you in the hospital to do your surgery, it certainly lead [sic] us to never seriously consider trying to work out some type of transfer". *Ibid.*

█ The Board is required to base its decisions on "all evidence and material of record", 38 U.S.C. § 7104(a) (formerly § 4004), and to provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record", 38 U.S.C. § 7104(d)(1) (formerly § 4004). *See Douglas v. Derwinski,* 2 Vet. App. 435, 438–39 (1992) (en banc); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive", and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet.App. at 57, 59. The Board failed to discuss (and apparently to consider) whether the "possible acute infarction" which the veteran suffered on the morning of September 19 constituted an emergency within the ambit of 38 C.F.R. § 17.80. On remand, the Board must provide reasons or bases for its conclusion as to this question and as to whether "treatment was procured through private sources in preference to available Government facilities". 38 C.F.R. § 17.89 (1991).

█ According to the benefit-of-the-doubt doctrine, 38 U.S.C. § 5107(b) (formerly § 3007), a claimant need demonstrate only that there is an "approximate balance of positive and negative evidence in order to prevail". *Gilbert,* 1 Vet.App. at 54. Further, the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) applies to the Board's application of the benefit-of-the-doubt doctrine. *Gilbert,* 1 Vet.App. at 58. On remand, the Board must explain its conclusion on the application of the doctrine as to each material issue. If the Board finds that the evidence that the veteran's medical situation satisfied each of the criteria of 38 C.F.R. § 17.80 is in relative equipoise, then the appellant will be entitled to the application of the benefit-of-the-doubt doctrine.

█ Once a claimant for VA benefits submits a well-grounded claim ("a plausible claim, one which is meritorious on its own or capable of substantiation", *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990)), "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim". 38 U.S.C. § 5107(a) (formerly § 3007). The Court holds, as a matter of law, that the appellant's claim was well grounded and thus triggered VA's duty to assist. In a May 8, 1990, letter to the Gainesville, Florida, VA Medical Center (MC), the appellant asked when he could have been scheduled for bypass surgery, had he sought admission to the Gainesville VAMC. R. at 127. The reply from the Chief of Medical Administration Service at the Gainesville VAMC did not address the veteran's question. On remand, the BVA must obtain an answer to this question from the VAMC and then determine whether an attempt to gain admission "would not have been reasonable, sound, wise, or practicable", or because "treatment ... would have been refused". 38 C.F.R. § 17.80. In addressing this issue, the Board may wish to order an independent medical evaluation. *See* 38 C.F.R. 4.1 (1991); *Tucker v. Derwinski,* 2 Vet.App. 201, 203 (1992).

Upon consideration of the record and the submissions of the parties, the Court de-

nies the Secretary's motion for summary affirmance, vacates the October 30, 1990, BVA decision, and remands the matter to the BVA for prompt readjudication, consistent with this decision. On remand, the appellant will be free to present additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet.App. 129 (1992). The Court expects the Board on remand to reexamine the evidence of record, seek appropriate additional evidence, and issue a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. §§ 5107(a), 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new BVA decision is mailed to the appellant.

VACATED AND REMANDED.