Citation Nr: 1607941 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 12-15 382 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUES

1. Entitlement to a compensable disability rating for hearing loss.

2. Whether a rating reduction for service-connected low back disability with degenerative joint disease from 40 percent disabling to 20 percent disabling, effective September 1, 2014, was proper. 

3. Entitlement to an increased disability rating in excess of 40 percent for 
service-connected low back disability with degenerative joint disease.

4. Whether a rating reduction for service-connected sciatica of the left lower extremity, from 10 percent disabling to 0 percent disabling, effective September 1, 2014, was proper.

5. Whether a rating reduction for service-connected sciatica of the right lower extremity, from 10 percent disabling to 0 percent disabling, effective September 1, 2014, was proper. 

6. Entitlement to an increased disability rating in excess of 10 percent for service-connected sciatica of the right lower extremity.

7. Entitlement to an increased disability rating in excess of 10 percent for service-connected sciatica of the left lower extremity. 


REPRESENTATION

Appellant represented by: Connecticut Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Catherine Cykowski, Counsel


INTRODUCTION

The Veteran had active duty service from August 1973 to August 1977.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from March 2012 and June 2014 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut. 

The June 2014 rating decision on appeal and November 2014 Statement of the Case considered both the propriety of the reduction of the ratings assigned for low back disability and left and right lower extremity sciatica and whether higher disability ratings were warranted for those disabilities. As such, the Board finds that the issues of increased ratings for low back disability and sciatica of the left and right lower extremities are currently in appellate status.

In December 2015, the Veteran testified at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record. At the hearing, the Veteran submitted additional evidence with a waiver of RO consideration. 

The issue of entitlement to an increased disability rating for hearing loss is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. A February 2013 rating decision proposed to reduce the rating assigned to the Veteran's service-connected degenerative disc disease at L5-S1 from 40 percent to 20 percent disabling.

2. The proposed reduction of the disability rating for degenerative disc disease at L5-S1 was implemented in a June 2014 rating decision. 

3. A February 2013 rating decision proposed to reduce the rating assigned to sciatica of the left lower extremity from 10 percent disabling to 0 percent disabling.

4. A February 2013 rating decision proposed to reduce the rating assigned to sciatica of the right lower extremity from 10 percent disabling to 0 percent disabling.
 
5. The proposed reductions of the disability ratings for sciatica of the left and right lower extremities were implemented in a June 2014 rating decision.

6. The reduction of the rating of the Veteran's service-connected degenerative disc disease at L5-S1, effective September 1, 2014, was made in compliance with applicable due process laws and regulations, but was not supported by the evidence of record at the time of the reduction. 

7. The reduction of the rating of the Veteran's service-connected sciatica of the left lower extremity, effective September 1, 2014, was made in compliance with applicable due process laws and regulations, but was not supported by the evidence of record at the time of the reduction.

8. The reduction of the rating of the Veteran's service-connected sciatica of the right lower extremity, effective September 1, 2014, was made in compliance with applicable due process laws and regulations, but was not supported by the evidence of record at the time of the reduction.

9. During the appeal period, degenerative disc disease at L5-S1 has been manifested with flexion more nearly approximating 30 degrees or less due to pain and without unfavorable ankylosis of the entire thoracolumbar spine or incapacitating episodes having a total duration of at least four weeks during any 12-month period.

10. During the rating period, sciatica of the left and right lower extremity has been manifested by no more than mild incomplete paralysis. 


CONCLUSIONS OF LAW

1. The criteria for restoration of the 40 percent rating for service-connected degenerative disc disease at L5-S1, effective September 1, 2014, are met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.105, 3.344, 4.118, Diagnostic Codes 5237-5242 (2015).

2. The criteria for restoration of the 10 percent rating for service-connected sciatica of the left lower extremity, effective September 1, 2014, are met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.105, 3.344, 4.124a, Diagnostic Codes 8529, 8629, 8729 (2015).

3. The criteria for restoration of the 10 percent rating for service-connected sciatica of the right lower extremity, effective September 1, 2014, are met. 38 U.S.C.A. 
§§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.105, 3.344, 4.124a, Diagnostic Codes 8529, 8629, 8729 (2015). 

4. The criteria for a rating in excess of 40 percent for degenerative disc disease at L5-S1 have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321(b), 4.1, 4.2, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Codes 5235 to 5242 (2014).

5. The criteria for a rating in excess of 10 percent for sciatica of the left lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8520 (2015).

6. The criteria for a rating in excess of 10 percent for sciatica of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8520 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Dingess v. Nicholson, 19 Vet. App. 473 (2006); Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

A June 2012 letter provided the Veteran with notice regarding his increased rating claims, in accordance with Vazquez.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service medical records and pertinent treatment records and providing an examination when necessary. 
38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The record indicates that the RO obtained all information relevant to the Veteran's claims. The service treatment records have been obtained, as well as post-service VA treatment records identified by the Veteran. The Veteran was afforded VA examinations of the lumbar spine and lower extremities in August 2012 and April 2013. An addendum opinion concerning functional impairment of the lumbar spine was obtained in February 2015. When VA undertakes to provide a VA examination or obtain a VA examination or opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran has been afforded adequate examinations. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issues on appeal has been met. 38 C.F.R. § 3.159(c)(4).

As noted above, the Veteran was afforded a Board hearing in December 2015. The Veterans Law Judge and the Veteran's representative outlined the issues on appeal, and the Veteran and representative engaged in a colloquy as to substantiation of the claims, including identifying relevant types of evidence. Overall, the hearing was legally sufficient and the duty to assist has been met. 38 U.S.C.A. § 5103A (West 2014); Bryant v. Shinseki, 23 Vet. App. 488 (2010).

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained the relevant records, and has provided adequate examinations to the Veteran. Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claim being decided. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

In light of the favorable action taken in the decision below to restore the Veteran's disability ratings for a low back disability and sciatica of the lower extremities, a discussion of whether VA has met its duties of notification and assistance is not required, and deciding the appeal at this time is not prejudicial to the Veteran.

Disability Ratings

Disability evaluations (ratings) are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

The degrees of disability specified are considered adequate to compensate for a loss of working time proportionate to the severity of the disability. 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27 (2015). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. It is the policy of the VA to administer the law under a broad interpretation, consistent with the facts in each case, with all reasonable doubt to be resolved in favor of the claimant. 
38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. After careful consideration of the evidence, any reasonable doubt remaining is resolved in the claimant's favor. 
38 C.F.R. § 4.3. 

In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the Veteran's disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007).

When evaluating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. 

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or particular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. 38 C.F.R. § 4.59.

In both claims for an increased rating on an original claim and an increased rating for an established disability, only the specific criteria of the Diagnostic Code are to be considered. Massey v. Brown, 7 Vet. App. 204, 208 (1994). In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991).



Rating Criteria for Lumbar Spine Disability

The Veteran's lumbar spine disability is rated according to the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a. Under the General Rating Formula, with or without symptoms such as pain, stiffness or aching in the area of the spine affected by residuals of injury or disease, the following ratings will apply: a 20 percent rating is assigned when forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine is greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis or abnormal kyphosis; a 30 percent rating is awarded for forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine; a 40 percent rating is assigned for unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine; a 50 percent rating is awarded for unfavorable ankylosis of the entire thoracolumbar spine; and a 100 percent rating is warranted for unfavorable ankylosis of the entire spine.

There are several notes following the General Rating Formula criteria, which provide the following: First, associated objective neurological abnormalities are to be rated separately under an appropriate diagnostic code. Second, for purposes of VA compensation, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateroflexion is 0 to 30 degrees, and left and right lateral rotation is 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateroflexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is to 240 degrees. Third, in exceptional cases, an examiner may state that, because of age, body habitus, neurological disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it
 does not conform to the normal range of motion stated in the regulation. 38 C.F.R. § 4.71a.

The Formula for Rating Intervertebral Disc Syndrome based upon Incapacitating Episodes provides that a 20 percent rating is warranted with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent rating is assignable with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A 60 percent rating is assignable with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. For purposes of evaluations under diagnostic code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1).

Reduction of Rating for Low Back Disability

A January 1980 rating decision granted service connection for back injury and assigned a 10 percent rating from July 1979. A 40 percent rating was assigned from July 2004. A claim for an increased rating was received in May 2012. A February 2013 rating decision proposed to reduce the rating assigned for the Veteran's low back disability from 40 percent to 20 percent disabling. 

Where a reduction in an evaluation of a service-connected disability is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance must be prepared setting forth all material facts and reasons. In addition, the RO must notify the Veteran at the Veteran's latest address that he or she has 60 days to present additional evidence showing that compensation should be continued at the present level. 38 C.F.R. § 3.105(e). The procedural framework and safeguards set forth in 38 C.F.R. § 3.105 governing rating reductions are required to be followed by VA before it issues any final rating reduction. See Brown v. Brown, 5 Vet. App. 413, 418 (1993).

In a rating reduction, not only must it be determined that an improvement in a disability has actually occurred, but also that the improvement actually reflects an improvement in a veteran's ability to function under the ordinary conditions of life and work. Brown v. Brown, 5 Vet. App. 413, 420-21; Schafrath v. Derwinski, 
1 Vet. App. 589, 594 (1991). 

The provisions of 38 C.F.R. §§ 4.1, 4.2, and 4.10 require that a reduction in rating be based upon review of the entire history of a veteran's disability. VA must then ascertain whether the evidence reflects an actual change in the disability and whether the examination reports reflecting such change are based on thorough examinations. Faust v. West, 13 Vet. App. 342 (2000). VA is not limited, however, to medical indicators of improvement. Rather, VA may rely on non-medical indicators of improvement to show that a veteran is capable of more than marginal employment. Id. The examination reports on which the reduction are based must be adequate. See Tucker v. Derwinski, 2 Vet. App. 201 (1992) (holding that the failure of the examiner in that case to review the claims file rendered the reduction decision void ab initio). 

In addressing whether improvement is shown, the comparison point generally is the last examination on which the rating at issue was assigned or continued. See Hohol v. Derwinski, 2 Vet. App. 169 (1992). Where, however, the rating was continued in order to see if improvement was in fact shown, the comparison point could include prior examinations as well. Collier v. Derwinski, 2 Vet. App. 247 (1992).

Specific requirements must be met in order for VA to reduce certain ratings assigned for service-connected disabilities. See 38 C.F.R. § 3.344; see also Dofflemyer v. Derwinski, 2 Vet. App. 277 (1992). The requirements for reduction of ratings in effect for five years or more are set forth at 38 C.F.R. § 3.344(a) and (b), which prescribe that only evidence of sustained material improvement under the ordinary conditions of life, as shown by full and complete examinations, can justify a reduction; these provisions prohibit a reduction on the basis of a single examination. See Brown, 5 Vet. App. at 417-18. Where doubt remains, the rating agency will continue the rating in effect, and consider scheduling reexamination 18, 24, or 30 months later. 38 C.F.R. § 3.344(b). Where a rating reduction was made without observance of law, the reduction must be vacated and the prior rating restored. Schafrath, 1 Vet. App. at 595. 

Under the provisions of 38 C.F.R. § 3.344(c), when a disability rating has been in effect for less than five years, a reexamination that shows improvement in a disability warrants a reduction in disability benefits. Specifically, it is necessary to ascertain, based upon a review of the entire recorded history of the condition, whether the evidence reflects an actual change in disability and whether examination reports reflecting change are based upon thorough examinations. In addition, it must be determined that an improvement in a disability has actually occurred and that such improvement actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work. See Brown at 420-421 (citing 38 C.F.R. §§ 4.1, 4.2, 4.10 and 4.13); 38 C.F.R. 3.344(c).

In determining whether the reduction was proper in this case, the Board must focus upon the evidence available to the RO at the time the reduction was effectuated, although post-reduction medical evidence may be considered in the context of evaluating whether the disability had actually improved. Cf. Dofflemyer, 
2 Vet. App. at 281-282. Such after-the-fact evidence may not be used to justify an improper reduction.

The Board is required to establish, by a preponderance of the evidence, that a rating reduction on appeal is warranted. See Kitchens v. Brown, 7 Vet. App. 320, 325 (1995).

A February 2013 letter informed the Veteran of a proposed reduction of the disability rating for his lumbar spine. The Veteran was provided with a 60-day period to submit evidence in support of his claim. The Veteran had a hearing at the RO in March 2013. He had VA examinations in August 2012 and April 2013. The RO issued rating decisions in May 2013, November 2013, March 2014 which addressed additional evidence submitted by the Veteran. The June 2014 rating decision on appeal reduced the rating for the Veteran's low back disability from 40 percent to 20 percent, effective September 1, 2014. 

The Board finds that the RO satisfied the due process notification requirements under 38 C.F.R. § 3.105(e). A February 2013 rating decision proposed to reduce the rating for low back disability. The Veteran was informed of the proposed reduction in a February 2013 letter. He was given 60 days to present additional evidence and was notified at his address of record. The Veteran was informed that the reason the RO proposed to reduce his ratings for low back disability was because his condition had improved. The Veteran was afforded a predetermination hearing. The final reductions were implemented in a June 2014 rating decision. 

The effective date of the reduction, September 1, 2014, was effective the last day of the month after expiration of the 60-day period from the date of notice of the June 2014 final rating action, as set forth in the applicable VA regulation. See 38 C.F.R.
§ 3.105(e). Thus, all procedural requirements were met.

The Board will now review the June 2014 rating decision that reduced the rating for the Veteran's low back disability to determine whether the reduction was supported by the evidence. 

The reduction of the rating for the Veteran's low back disability was based on the findings of VA examinations dated in August 2012 and April 2013. The August 2012 VA examination report showed that the Veteran had forward flexion of the thoracolumbar spine to 50 degrees, with painful motion at 30 degrees. He had extension to 25 degrees with pain at 25 degrees. He had left and right lateral flexion to 30 degrees. The Veteran had left and right lateral rotation to 30 degrees. The examination noted that the functional loss of the lumbar spine included less movement than normal, weakened movement, excess fatigability and pain on movement. 

The April 2013 VA examination showed forward flexion to 40 degrees, with pain at 40 degrees. On repetitive motion testing, the Veteran had forward flexion to 40 degrees. The examiner noted that functional loss of the lumbar spine included less movement than normal, excess fatigability, pain on movement and interference with sitting, standing and/ or weight-bearing. In an addendum opinion dated in February 2015, the examiner stated that there is insufficient evidence or objective examination findings that would provide a reliable prediction of decreased functional ability during flare-ups. The examiner stated that it was not possible without resorting to speculation to determine the loss of range of motion as a result of flare-ups. 

A prior VA examination of the thoracolumbar spine in September 2010 showed forward flexion limited to 30 degrees. The examiner noted that, with distraction and passive observation, the Veteran had forward flexion to 90 degrees. The examiner noted that there was a significant report of pain with repetitive range of motion to the point that the Veteran would not actively rotate his spine after two rotations.

The Board finds that restoration of the 40 percent rating for the Veteran's low back disability is warranted, as the evidence does not adequately establish that there was sustained material improvement in the Veteran's disability under the ordinary conditions of life. In this regard, the findings of the August 2012 examination more nearly approximate the criteria for a 40 percent rating based on lumbar spine flexion to 50 degrees, with pain beginning at 30 degrees. With consideration of the Veteran's functional loss due to pain, the Veteran's range of motion approximated forward flexion of 30 degrees or less. If there is any doubt as to whether there has been material improvement in the given disability, the rating in effect will be continued. See Brown v. Brown , 5 Vet. App. 413, 417-18 (1995). Accordingly, the Board finds that the reduction implemented in the June 2014 rating decision was not proper. Accordingly, a 40 percent rating for low back injury is restored. 

Increased Rating for Lumbar Spine Disability

A January 1980 rating decision granted service connection for back injury and assigned a 10 percent rating from July 1979. A 40 percent rating was assigned from July 2004. A claim for an increased rating was received in May 2012. 

Upon VA examination in August 2012, the Veteran reported constant pain. He reported that his back pain resulted in limitations with standing and walking. Range of motion testing showed forward flexion to 50 degrees, with painful motion from 30 degrees. The Veteran had additional limitation of motion with repetition. On repetition, he had forward flexion to 40 degrees. The examiner noted that the functional loss of the lumbar spine included less movement than normal, weakened movement, excess fatigability and pain on movement. The examiner indicated that the Veteran did not have intervertebral disc syndrome. The Veteran reported occasional use of a back brace. 

The Veteran had a VA examination in April 2013. The Veteran reported chronic low back pain. He reported that he required frequent breaks during the day. He also reported trouble sitting or standing for long periods of time. The Veteran reported that flare-ups affected the function of his back. 

Upon physical examination, the Veteran had forward flexion to 40 degrees, with painful motion at 40 degrees. On repetition, he had forward flexion to 40 degrees. The examiner noted that the functional loss of thoracolumbar spine included less movement than normal, excess fatigability, pain on movement and interference with sitting, standing and/or weight-bearing. The Veteran did not have intervertebral disc syndrome. The Veteran reported that he occasionally used a cane. 

In February 2015, the VA examiner provided an addendum opinion. The examiner opined that there is insufficient medical evidence that would provide a reliable prediction of decreased functional ability during flare-ups or when the back is used repeatedly over a period of time. The examiner opined that it is not possible to determine the degrees of motion lost during flare-ups. 

The Board finds that a rating in excess of 40 percent is not warranted for degenerative disc disease at L5-S1. In this regard, a higher rating is not assignable under the General Rating Formula, as the Veteran does not have unfavorable ankylosis of the entire thoracolumbar spine. A rating in excess of 40 percent is not warranted based upon incapacitating episodes, as the Veteran does not have incapacitating episodes having a total duration of 6 weeks during a 12-month period. 

The rating criteria further provide that neurologic abnormalities are to be evaluated separately under the appropriate diagnostic code. Service connection is currently in effect for bilateral lower extremity sciatica, and separate evaluations are assigned. The evidence does not show any other neurological manifestations of the Veteran's lumbar spine disability which warrant separate ratings.

Reduction of Ratings for Sciatica of the Left and Right Lower Extremities

A March 2012 rating decision granted service connection for sciatica of the lower extremities. A 10 percent rating was assigned for each lower extremity from June 1, 2011 pursuant to Diagnostic Code 8729. A claim for an increased rating was received in May 2012. The Board notes that while the respective ratings were not in effect for more than five years, compliance with the provisions of 38 C.F.R. § 3.344, requiring not only improvement in a disability, but also that the improvement actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work is still required. See 38 C.F.R. § 3.344; Brown (Kevin) v. Brown, 5 Vet. App.413, 421 (1993) ("Thus, in any rating reduction case not only must it be determined that an improvement in a disability has actually occurred but also that improvement actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work.").

Sciatica of the lower extremities is rated according to Diagnostic Code 8720. 
Diagnostic Code 8720 pertains to paralysis of the sciatic nerve. A 0 percent rating is warranted for neuralgia of the sciatic nerve. Paralysis of the sciatic nerve is rated under Diagnostic Code 8520. Diagnostic Code 8520 provides that a 10 percent rating is assignable for mild incomplete paralysis. A 20 percent rating is assignable for moderate incomplete paralysis of the sciatic nerve. A 40 percent rating is warranted for moderately severe incomplete paralysis. A 60 percent rating is warranted for severe incomplete paralysis with marked muscular atrophy. A maximum rating of 80 percent is warranted for complete paralysis of the sciatic nerve; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of the knee weakened or (very rarely) lost. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2015).

The term "incomplete paralysis" indicates a degree of lost or impaired function that is substantially less than that which is described in the criteria for an evaluation for complete paralysis, whether the less than total paralysis is due to the varied level of the nerve lesion or to partial nerve regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

A February 2013 rating decision proposed to reduce the disability rating for neuralgia of the lower extremities from 10 percent to 0 percent disabling for each extremity. The Veteran was provided with a 60-day period to submit evidence in support of his claim. The Veteran had a hearing at the RO in March 2013. He had VA examinations in August 2012 and April 2013. The RO issued rating decisions in May 2013, November 2013, March 2014 which addressed additional evidence submitted by the Veteran. The June 2014 rating decision on appeal reduced the rating for the Veteran's lower extremity sciatica from 10 percent disabling to 0 percent disabling for each lower extremity, effective September 1, 2014. 

The reduction of the ratings for bilateral lower extremity neuralgia was based on VA examinations performed in August 2012 and April 2013. The August 2012 examination report noted that the Veteran had constant moderate pain and intermittent severe pain of both lower extremities and severe paresthesias and/or dysesthesias of the lower extremities. There was severe numbness of the lower extremities. The examiner noted that the right side was not affected by radiculopathy. The examiner noted that the right sciatic nerve was normal. The examiner indicated that mild radiculopathy was present on the left side. The examiner noted mild incomplete paralysis of the left sciatic nerve. 

The April 2013 VA examination showed normal reflexes of the knees and ankles. The examination noted normal sensory examinations of the upper anterior thigh, thigh and knee, lower leg and ankle and foot and toes. The examination indicated that the Veteran's symptoms included intermittent moderate pain, paresthesias and dysesthesias of both lower extremities. The examiner noted moderate radiculopathy of the sciatic nerves of both lower extremities. 

The examiner opined that the examination did not support a finding of radiculopathy or neuropathy. The examiner opined that the history was suggestive of intermittent sciatica, which would be mononeuropathy. The examiner indicated that compression of the sciatic nerve may not produce significant abnormalities on EMG unless it is relatively severe. The examiner opined that it is at least as likely as not that sciatica is associated with the Veteran's lumbar spine disability. 

The ratings assigned for lower extremity neuralgia in March 2012 were based on a June 2011 VA neurological examination. The June 2011 examination reflects that the Veteran reported numbness of the lower extremities. That examination report noted decreased sensation of the L5 distribution (saphenous nerve) of the left lower extremity and decreased sensation of the right posterior femoral cutaneous nerve of the right posterior thigh. The remaining sensation was intact for sharp, dull and monofilament of the lower extremities. The examiner noted moderate to severe neuralgia depending on daily activities. 

At the Board hearing, the Veteran testified that his lower extremity symptoms include tingling in his legs and the feeling of his legs falling asleep. 

In this case, the reduction of the ratings assigned for sciatica was based upon the April 2013 examination, which showed intermittent sciatica and a lack of objective evidence of radiculopathy. Based on those findings, the RO concluded that a non-compensable rating was warranted for asymptomatic incomplete paralysis. 
In this case, the examinations upon which the rating was based do not show sustained improvement. The April 2013 examination reflects that the Veteran reported similar lower extremity symptoms as were shown in 2011, including tingling, numbness and pain in the lower extremities. The April 2013 examination diagnosed intermittent sciatica of both lower extremities, which was described as "moderate." The Board finds that the April 2013 examination did not establish an improvement in the Veteran's ability to function under the ordinary conditions of life and work. Accordingly, the Board finds that the reduction of the ratings for left and right lower extremity sciatica in the June 2014 rating decision was not proper. Therefore, separate 10 percent ratings are restored for sciatica of the left and right lower extremities, effective from September 1, 2014. 

Increased Rating for Sciatica of the Bilateral Lower Extremities 

Upon VA examination in August 2012, the Veteran reported burning pain on both sides and in his feet. The Veteran reported constant moderate pain of the lower extremities. He reported symptoms of severe intermittent pain of the lower extremities, severe paresthesias and/or dysesthesias and severe numbness. Examination showed normal sensation of the right thigh and knee, normal sensation of the right leg and ankle, normal sensation of the right foot and toes and decreased sensation of the left foot and toes. The examiner noted normal findings for the sciatic nerves, common peroneal nerves, superficial peroneal nerves, deep peroneal nerves, internal popliteal nerves. The examiner noted mild incomplete paralysis of the left posterior tibial nerve. The internal saphenous nerve, obturator nerve, external cutaneous nerve of the thigh and ilioinguinal nerve were normal. The examiner opined that there was no electrodiagnostic evidence of radiculopathy or neuropathy. 

An EMG report dated in September 2012 showed no electrodiagnostic evidence of neuropathy or lumbar radiculopathy. 

Upon VA examination in April 2013, the examiner noted that the Veteran had been diagnosed with sciatica. The Veteran reported that back pain radiated down both legs. He described the pain in his legs as shooting, with occasional numbness and tingling. On physical examination, the Veteran had normal knee and ankle reflexes of the lower extremities. Sensory examinations of the thighs, knees, lower legs, ankles, feet and toes were normal. The examiner noted signs and symptoms of radiculopathy. The symptoms included intermittent moderate pain of both lower extremities, moderate paresthesias and dysesthesias of the lower extremities and moderate numbness of the lower extremities. The Veteran did not have any other signs and symptoms of radiculopathy. The examiner indicated that the sciatic nerves were involved. The examiner indicated that the Veteran's radiculopathy was of moderate severity. 

The examiner noted that the Veteran reported radicular pain. The examiner noted that examination and testing did not support a diagnosis of neuropathy or radiculopathy. The examiner noted that the Veteran's history suggested intermittent sciatica, which would be a mononeuropathy. The examiner noted that compression of the sciatic nerve would not produce significant abnormalities on EMG unless it was relatively severe. 

The above evidence establishes that sciatica of the lower extremities is manifested by sensory symptoms, such as paresthesias and dysesthesias of both lower extremities. The evidence of record does not show objective neurological abnormalities of the lower extremities. The rating criteria for peripheral nerves provide that, when involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. 38 C.F.R. § 4.214a. Based upon the findings of sensory impairment and intermittent sciatica, the Board that sciatica of the left and right lower extremities more nearly approximates mild incomplete paralysis of the sciatic nerve of each lower extremity. Mild impairment is contemplated by the 10 percent ratings currently assigned for each lower extremity under Diagnostic Code 8520. The Board has considered whether higher ratings are warranted under any other diagnostic codes pertaining to the peripheral nerves. There are no findings of impairment of any other peripheral nerves of the lower extremities to warrant ratings in excess of 10 percent under any other diagnostic codes pertaining to the peripheral nerves. 

Accordingly, in the absence of evidence of moderate incomplete paralysis of the sciatic nerve of either lower extremity, disability ratings in excess of 10 percent for sciatica of the left and right lower extremities are denied. In reaching these determinations, the Board has considered the benefit of the doubt. 38 U.S.C.A. 
§ 5107; 38 C.F.R. §§ 4.3, 4.7.

Extraschedular Considerations

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2015). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 
38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

The rating criteria for peripheral nerve disabilities consider the degrees of paralysis of the peripheral nerves. The rating criteria of the General Rating Formula for Diseases and Injuries of the Spine contemplate limitation of motion. The rating criteria also take into consideration functional loss due to pain, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, and atrophy of disuse. See 38 C.F.R. §§ 4.40, 4.45, 4.59. 

Finally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

For these reasons, the Board finds that the criteria for referral for extraschedular rating have not been met. 38 C.F.R. § 3.321(b)(1).

The Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. The Board finds that the facts in this case do not support an inferred claim for a TDIU. A claim for a TDIU was previously adjudicated and denied by the RO in a February 2013 rating decision. Rice v. Shinseki, 22 Vet. App. 447 (2009). The Veteran did not file a notice of disagreement or perfect an appeal regarding the denial of TDIU. Further, the record since February 2013 does not raise the issue of entitlement to TDIU. The April 2013 VA examination report and the December 2015 hearing testimony indicate that the Veteran is currently employed. Accordingly, the matter of entitlement to a TDIU is not currently before the Board.











 (Continued on the next page)

ORDER

Restoration of the 40 percent rating for service-connected degenerative disc disease at L5-S1, effective September 1, 2014 is granted, subject to regulations governing the payment of monetary benefits. 

Restoration of the 10 percent rating for sciatica of the right lower extremity, effective September 1, 2014 is granted, subject to regulations governing the payment of monetary benefits.

Restoration of the 10 percent rating for sciatica of the left lower extremity, effective September 1, 2014 is granted, subject to regulations governing the payment of monetary benefits.

A disability rating in excess of 40 percent for degenerative disc disease at L5-S1 is denied. 

A disability rating in excess of 10 percent for sciatica of the left lower extremity is denied. 

A disability rating in excess of 10 percent for sciatica of the right lower extremity is denied. 


REMAND

At the Board hearing, the Veteran testified that a VA audiologist in Newington told him that his hearing disability has worsened. He testified that he has been advised that he needs hearing aids. As there is evidence indicating that the Veteran's hearing loss has worsened since his last examination, he should be afforded a new examination in compliance with VA's duty to assist, to determine the current severity of his bilateral hearing loss. See Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994); VAOPGCPREC 11-95 (1995). 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA audiology examination. The claims folder must be provided for the examiner's review in conjunction with the examination, and the examination report should indicate that the examiner reviewed the claims file. All indicated tests and studies should be performed, including audiometric testing and speech recognition testing, and all clinical findings should be set forth in detail. The VA examiner should comment upon the effect of hearing loss on the Veteran's occupational functioning and daily activities.

2. After completing any further development deemed necessary, readjudicate the claim. If the claim remains denied, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate time for response. The matter should then be returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).










 (Continued on the next page)

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs