# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-884

JOHN D. SPRINGER , APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided  April 14, 2000    )

*Robert A. Laughlin*, of Omaha, Nebraska, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Jacqueline M. Sims*, Acting Deputy Assistant General Counsel, of Washington, D.C., were on the brief for the appellee.

Before NEBEKER, *Chief Judge,* and HOLDAWAY and IVERS , *Judges.*

IVERS, *Judge*:  The veteran appeals from a January 30, 1998, Board of Veterans' Appeals (BVA or Board) decision, which determined that rental proceeds received by an Indian beneficiary from Indian land held in trust by the United States is countable income for Improved Disability Pension (IDP) purposes.  Record (R.) at 3, 6.  Both the veteran and the Secretary have filed briefs.  On August, 8, 1999, the Court ordered the Secretary to submit a memorandum addressing the applicability of section 459e of title 25, United States Code, to the facts of this case, and provided an opportunity for the veteran to respond to the memorandum.  Both parties responded accordingly.  This appeal is timely, and the Court has jurisdiction over the case pursuant to section 7252(a) of title 38, United States Code.  For the reasons stated below, the Court will vacate the Board's decision and remand the case.

## I.  FACTS

The veteran served on active duty in the U.S. Marine Corps from September 25, 1950, to August 1, 1952, during the Korean Conflict. R. at 9. Due to the veteran's rheumatoid arthritis and a December 10, 1982, VA examiner's statement indicating the veteran's unemployability, in a March 14, 1983, rating decision, VA awarded non-service-connected pension benefits, effective December 20, 1982. R. at 12. As a result of his status as a nursing home patient, the veteran was awarded additional benefits, effective July 1, 1988. R. at 3.

The veteran is listed as a member of the Omaha Indian Tribe on the Omaha Statutory Roll. R. at 214. In 1989, the veteran was notified that his uncle, Thomas B. Walker, had died and had bequeathed to the veteran all of his property (R. at 34), which included five parcels of Indian trust lands on the Kiowa-Comanche-Apache Indian Reservation in Oklahoma. R. at 36. In a May 29, 1991, letter to the regional office (RO), the veteran's representative informed the RO that, on March 29, 1991, the Bureau of Indian Affairs had sent the veteran a partial distribution of his late uncle's estate worth $1,700. R. at 17. The letter indicated that the veteran anticipated the receipt of $3,500 annually until his death. *Id*. Due to the change in his income, on September 23, 1991, the RO informed the veteran that his pension payments were being reduced and that the $1,700 partial distribution was countable income to be subtracted from his maximum annual income and the result divided by 12 to determine his monthly pension. R. at 40.

In an April 20, 1992, letter, the veteran's representative informed the RO that, starting in 1993," the veteran was expecting to receive $2,400 under the Indian General Allotment Act of 1887 (§§ 1 et seq., 5, 25 U.S.C. §§ 331 et seq., 348) and pursuant to 25 U.S.C. § 410. R. at 58-59; 25 U.S.C. § 410 (Money from lease or sale of trust lands is liable for certain debts). In an April 22, 1992, Improved Pension Eligibility Verification Report, the veteran indicated that he anticipated the receipt of $2,422 annually in rental proceeds from the inherited Indian trust lands. R. at 66-67. In response to the veteran's Eligibility Verification Report, in a July 13, 1992, letter, the RO informed the veteran of its determination that, since he would be receiving $2,717 in rental proceeds from the parcels, his annual pension benefits would be reduced by that amount, effective April 1, 1991. R. at 69. In March 1993, the veteran submitted an Eligibility Verification Report, which reported that he anticipated receiving an annual income of approximately $2,422, as rental proceeds. R. at 134.

On October 21, 1992, the veteran appeared at a hearing before the Committee on Waivers and Compromises. R. at 112-28. He presented several exhibits, including excerpts from the United States Code, caselaw, revenue rulings, and a chart of his projected annual income generated by the Indian trust lands. R. at 98-110. The veteran's testimony confirmed that the inherited land was held in trust by the U.S. government, the rental proceeds payments were made to him by the Bureau of Indian Affairs, and that he was not permitted to sell the land. R. at 118.

In a June 14, 1993, advisory opinion, the VA Compensation and Pension Service discussed a July 18, 1990, VA General Counsel's Opinion, which stated:

> [R]ental income received by an Indian beneficiary from land held in trust by the Federal Government is countable as income for VA purposes, but . . . the land is not counted as part of the net worth of the beneficiary. M21-1[,] Part IV, section 16.43d, provides specific instruction on how to treat this income. From the evidence presented, this is income from lands held in trust by the Federal Government and should be handled under this section.

R. at 136; VA Gen. Coun. Prec. 8-87 (July 18, 1990) [hereinafter G.C. Prec. 8-87].

In a March 7, 1996, decision, the Board determined that rental income from Indian trust land is countable income for IDP purposes. R. at 224. In an August 28, 1997, order, the Court vacated the Board's March 7, 1996, decision and remanded the veteran's claim for further adjudication. R. at 233.

On January 30, 1998, the Board determined that "[a]ll but $2000 of the rental proceeds received per calendar year [after January 1, 1994] from real property inherited by the veteran, and held in trust by the Federal Government, is countable as income for [IDP] purposes." R. at 6. This appeal followed.

## II. ANALYSIS

The Court reviews questions of fact using the "clearly erroneous" standard of review. In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA . . . [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

3

Section 3.271(a) of title 38, Code of Federal Regulations (1998), states, "Payments of any kind from any source shall be counted as income during the 12-month annualization period in which received unless specifically excluded under [section] 3.272." *See* 38 U.S.C. § 1503(a) ("In determining annual income under this chapter, all payment of any kind or from any source . . . shall be included" exception for certain exclusions. Rental proceeds from federal trust lands is not listed as an exclusion.). "Subsection (d) of section 3.271 provides, 'Income from real or personal property is countable as income of the property's owner.'" VA ADJUDICATION PROCEDURE MANUAL, M21-1 [hereinafter MANUAL M21-1], Part IV, para. 16.43(d). However, pursuant to section 3.272(r) of title 38, Code of Federal Regulations (1998), income of up to $2,000 per calendar year received by American Indian beneficiaries from trust lands or restricted lands, as defined in section 151.2 of title 25, Code of Federal Regulations (1999), shall be excluded from countable income for the purpose of determining entitlement to improved pension and is deductible only during the 12-month annualization period in which it is paid. *Id.* Prior to the insertion of subsection (r) into section 3.272 in 1994, income received from trust lands or restricted lands was counted entirely as income (i.e., no $2000 exclusion was allowed). *Id.* The Court will apply the version of the regulation that includes subsection (r) because it is the version most favorable to the veteran. *See Karnas v. Derwinski*, 1 Vet.App. 308, 312-13 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should . . . apply unless Congress provided otherwise or permitted the Secretary . . . to do otherwise and the Secretary did so.").

At the time of his uncle's death (in 1989), the veteran was receiving VA pension benefits. *See* 38 U.S.C. § 1521(a) ("The Secretary shall pay to each veteran of a period of war who meets the service requirements of this section . . . and who is permanently and totally disabled from non-service-connected disability not the result of the veteran's willful misconduct, pension at the rate prescribed by this section . . . ."); *Martin v. Brown*, 7 Vet.App. 196, 198 (1994). However, pursuant to section 1522(a) of title 38, United States Code, the Secretary has the discretion to deny or discontinue the VA pension benefit payments based upon consideration of the veteran's annual income. Accordingly, VA correctly reduced the veteran's pension rate by the $1,700 in rental proceeds that he received from the Bureau of Indian Affairs in 1991 (a partial distribution of his

4

uncle's estate), and again reduced it by $2,422 to account for the rental proceeds received by the veteran in 1992 (R. at 40-41), because such income was countable as "[p]ayments of any kind from any source." *See* 38 C.F.R. § 3.271(a).

In a July 18, 1990, VA Precedent Opinion, stemming from an October 2, 1987, General Counsel Opinion, VA determined that income received from lands held in trust by the federal government was countable as income for pension purposes, but was not considered in determining the veteran's net worth. G.C. Prec. 8-87. The General Counsel concluded that section 1503(a) was intended to mean that all income is countable income, unless specifically excluded by statute. *See* S. Rep. No. 95-1329, 95th Cong., 2d Sess. 22 (1978) (Conference Report); *Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991) ("Where a statute's language is plain, and its meaning clear, no room exists for construction."). The General Counsel stated, "In the case of . . . an Indian who owns acreage held in trust by the Federal Government from which he receives rental income, none of the exceptions enumerated in section 1503(a) applies." G.C. Prec. 8-87 at 2. In specifically noting that the same income is not to be included as part of the veteran's net worth (G.C. Prec. 8-87 at 2-4), the General Counsel adopted the argument of a U.S. Senator and reasoned that Indian trust lands, in general, are not disposable without consent of the federal government and, therefore, cannot be considered readily available for living expenses. G.C. Prec. 8-87 at 3. As a result, the trust lands, pursuant to sections 1407 and 1408 of title 38, United States Code, are an excludable resource for the purposes of determining the veteran's net worth within the meaning of section 1522(a). G.C. Prec. 8-87 at 2.

In his brief, the veteran presents arguments by analogy rather than submitting a statutory exclusion from countable income of rental proceeds received from federal trust lands. He argues that *Squire v. Capoeman*, 351 U.S. 1 (1955) is controlling in the case here on appeal. In *Squire*, the U.S. Supreme Court held that proceeds from the sale of timber on trust patent land is not subject to federal income taxation as a capital gain. The Court reasoned that under the Indian General Allotment Act of 1887 (§§ 1 et seq., 5, 25 U.S.C. §§ 331 et seq., 348), following the expiration of a stated period, the Secretary of the Interior was to deed the trust patent lands in fee simple to the allottee "free of all charge or encumbrance whatsoever." *Squire*, 351 U.S. at 7. Unlike *Squire,* the issue before this Court involves VA pension benefits, not federal income taxation. Federal laws of taxation are

distinctly separate from those governing a veteran's entitlement to VA pension benefits. In his brief, the veteran repeatedly and incorrectly argues that rental income is excluded from federal taxation and should, therefore, be excluded from countable income for VA pension purposes. Appellant's Brief (Br.) at 4, 6, 14. He argues that section 410 of title 25, United States Code, precludes the federal government from treating rental income received from federal trust lands as countable income for IDP purposes. Br. at 4; 25 U.S.C. § 410. The Board rejected the argument and concluded that neither section 410 nor section 117a (per capita distribution of funds to tribe members) provides exclusions from countable income. R. at 5. Section 410 states, "No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period . . . ." However, there is no evidence in this case that the rental income received by the veteran is "liable for the payment of any debt." Section 117a and b(a) read together provide tax exemption for per capita distribution of funds held in trust by the Secretary of the Interior. Again, tax exempt status is not the issue here on appeal.

Similarly, the veteran argues that section 459e of title 25, United States Code, excludes rental income from being countable. Br. at 11, 14, 15. Section 459e provides:

> All property conveyed to tribes pursuant to this subchapter and all receipts therefrom referred to in section 459e of this title, shall be exempt from Federal, State, and local taxation so long as such property is held in trust by the United States. Any distribution of such receipts to tribal members shall neither be considered as income or resources of such members for purposes of any such taxation nor as income, resources, or otherwise utilized as the basis for denying or reducing the financial assistance or other benefits to which such member or his household would otherwise be entitled to under the Social Security Act [42 U.S.C.A. § 301 et seq.] or any other Federal or federally assisted program.

The veteran argues that the VA benefits system is a federal program under section 459e, and that section directly contradicts section 3.272. Appellant's Br. at 11.

On August 10, 1999, the Court ordered the Secretary to submit a memorandum addressing the applicability of section 459e to the facts of this case. In his September 23, 1999, response, the Secretary argues that section 459e is inapplicable to the facts of this case because section 459e relates only to subchapters in which it appears, and section 459e appears only in subchapter IV,

chapter 14, title 25, United States Code, which is titled "Conveyance of Submarginal Land." In fact, all of section 459 pertains to the conveyance of submarginal land, not just section 459e. There is no evidence that the inherited trust land from which the veteran receives rental income is, or is not, to be considered "submarginal land." The Court notes that both parties have attempted to determine whether the land is submarginal. The veteran contacted the Bureau of Indian Affairs (Appellant's Response at 1) and the Secretary searched the Federal Register notices designating submarginal land issued by the Department of the Interior from July 1, 1980, to the present. Secretary's Response at 4. Both searches were unsuccessful. In his memorandum, the Secretary concedes that, should a determination be made that the trust lands in question are "submarginal lands," as described in sections 459a(a) or (b), or 459b, "VA would be required to exclude such income from benefit-eligibility calculations, regardless of 38 C.F.R. § 3.372." Secretary's Response at 4. The veteran responded to the Secretary's argument by arguing that the label "submarginal lands" refers to the "temporary inability of the land to provide more than a marginal economic return rather than to a long-term submarginal status." Appellant's Response at 2. The veteran points out that "[t]he fact that the total income of [the veteran's] interests approximates $2,422 per year, certainly leads one to believe [that] the land has "marginal economic return." *Id.*

The question of whether the disputed federal trust land is submarginal land is a question of fact to be determined by the Board upon readjudication of the veteran's claim. Therefore, remand is necessary. The Court agrees with the parties that if the Board concludes that the disputed trust land is in fact "submarginal land," then section 459e is applicable and the income in question would be excludable from countable income under 38 C.F.R. § 3.272. Should the Board determine that the disputed lands are not "submarginal lands," section 3.272(r) will control the outcome of its decision. The inability of either party, despite efforts by both, to clearly identify the source of the veteran's income as coming from submarginal lands suggests a third alternative, which the Board should consider. That alternative would be to consider the evidence to be in equipoise and apply the benefit of the doubt rule. *Gilbert*, 1 Vet.App. at 53 ("Unlike other claimants and litigants, pursuant to 38 U.S.C. § 3007(b), a veteran is entitled to the 'benefit of the doubt' when there is an 'approximate balance of positive and negative evidence.'").

### III. CONCLUSION

After consideration of the veteran's brief, the Secretary's brief and memorandum, the veteran's response to the memorandum, and a review of the record, the Court has concluded that a determination as to whether the disputed land is "submarginal land" pursuant to section 459e, requires further fact finding by the Board. Thus, the Board's January 30, 1998, decision is VACATED and the matter is REMANDED for readjudication consistent with this opinion.