﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 200305-68211
DATE: February 26, 2021

ORDER

An initial evaluation in excess of 50 percent for posttraumatic stress disorder (PTSD) is denied. 

FINDING OF FACT

The Veteran’s PTSD is not shown to have resulted in severe impairment or occupational and social impairment with deficiencies in most areas.

CONCLUSION OF LAW

The criteria for an initial evaluation in excess of 50 percent for PTSD have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.130, Diagnostic Code 9411 (as in effect prior to November 7, 1996, and thereafter). 

REASONS AND BASES FOR FINDING AND CONCLUSION

1. Initial evaluation in excess of 50 percent, PTSD.

The Veteran asserts that he is entitled to an initial evaluation in excess of 50 percent for PTSD. 

In October 2017, the Board granted service connection for an acquired psychiatric disability. That same month, the RO effectuated the Board’s decision. The RO granted service connection for “acquired psychiatric disability, to include dysthymia, anxiety disorder, depressive disorder, adjustment disorder, and/or PTSD,” and assigned a 30 percent evaluation, with an effective date of January 25, 1994. 

In April 2018, the Veteran filed a claim for an increased rating. In October 2019, the RO essentially readjudicated the initial evaluation issue de novo, and increased the Veteran’s evaluation to 50 percent, with an effective date of January 25, 1994. 

That same month, the Veteran filed a timely AMA Notice of Disagreement, electing for Direct Review Lane. Under the direct review option, no additional evidence received after the issuance of the appealed rating decision may be considered; rather, the Board review is limited to the evidence of record at the time of the October 16, 2019 rating decision. 

With regard to the history of the disability in issue, the Veteran is shown to have served in the Persian Gulf theater. He was not treated for psychiatric symptoms during service. Following separation from his second period of active duty, he is first shown to have received treatment for psychiatric symptoms in 1994. 

As an initial matter, the RO’s assignment of an effective date for service connection in 1994 appears to have been in error. In a final decision, dated in October 1997, the Board denied a claim for service connection for major depression. In March 1999, the Board’s decision was affirmed by the Court of Appeals for Veterans Claims. In an unappealed and final decision, dated in January 2001, the RO determined that new and material evidence had not been submitted to reopen the claim. In an unappealed and final decision, dated in November 2001, the RO denied a claim for service connection for PTSD. A claim to reopen was not received until May 2003. See Veteran’s claim (VA Form 21-526), received in May 2003. Accordingly, there is no basis for an effective date in 1994. See 38 U.S.C. §§ 7104 (b), 7105 (c); 38 C.F.R. §§ 3.400, 20.1100, 20.1103. In any event, the Board will not disturb this aspect of the RO’s decision at this time. Ultimately, this distinction is immaterial as the evidence of record does not show a rating in excess of 50 percent is warranted at any time since 1994.

Assuming the 1994 effective date, during the course of the appeal, the rating criteria were changed. Specifically, on October 8, 1996, the VA published a final rule, effective November 7, 1996, to amend the section of the Schedule for Rating Disabilities dealing with mental disorders. 61 Fed. Reg. 52695 (Oct. 8, 1996). 

In Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003), the United States Court of Appeals for the Federal Circuit overruled Karnas v. Derwinski, 1 Vet. App. 308 (1991), to the extent it conflicts with the precedents of the Supreme Court and the Federal Circuit. In Karnas, the Court of Appeals for Veterans Claims held that where the law or regulations change while a case is pending, the version most favorable to the claimant applies, absent Congressional intent to the contrary. In VAOPGCPREC 7-2003, the General Counsel held that Karnas is inconsistent with Supreme Court and Federal Circuit precedent insofar as Karnas provides that, when a statute or regulation changes while a claim is pending before the VA or a court, whichever version of the statute or regulation is most favorable to the claimant will govern unless the statute or regulation clearly specifies otherwise. The General Counsel held that the rule adopted in Karnas no longer applies in determining whether a new statute or regulation applies to a pending claim. The General Counsel indicated that pursuant to Supreme Court and Federal Circuit precedent, when a new statute is enacted or a new regulation is issued while a claim is pending before VA, VA must first determine whether the statute or regulation identifies the types of claims to which it applies. If the statute or regulation is silent, VA must determine whether applying the new provision to claims that were pending when it took effect would produce genuinely retroactive effects. If applying the new provision would produce such retroactive effects, VA ordinarily should not apply the new provision to the claim. If applying the new provision would not produce retroactive effects, VA ordinarily must apply the new provision. VAOPGCPREC 7-2003. 

Under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 9411 (as in effect prior to November 7, 1996), a 70 percent rating is when the ability to establish and maintain effective or favorable relationships with people was severely impaired, and the psychoneurotic symptoms were of such severity and persistence that there is severe impairment in the ability to obtain or retain employment.

Under DC 9411, (as in effect November 7, 1996), a 70 percent rating is warranted for PTSD manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 

The symptoms listed at 38 C.F.R. § 4.130 are not an exclusive or exhaustive list of symptomatology which may be considered for a higher rating claim. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

This appeal was certified to the Board in May 2020, subsequent to the effective date for changes to the applicable regulations, DSM-5 is applicable to this claim. See 70 Fed. Reg. 45,093-94 (Aug. 4, 2014). In such cases, it is not appropriate to discuss global assessment of functioning (GAF) scores. Golden v. Shulkin, 29 Vet. App. 221 (2018). 

When determining the appropriate disability evaluation to assign, the Board’s primary consideration is the Veteran’s symptoms, but it must also make findings as to how those symptoms impact the Veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442. Nevertheless, as all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran’s impairment must be “due to” those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. 

Service treatment records associated with post-active duty service in the National Guard, and VA treatment reports, show that beginning in May 1994, the Veteran complained of symptoms that included anxiety, depression, low energy, irritability, poor sleep, mood swings, and financial problems due to his ex-wife’s spending when he was overseas. He reported getting divorced in 1992 or alternatively, in 1993, after being married for 11 years. He stated that his depression was mostly related to his job. The findings noted that he was alert and oriented times three. Insight and judgment were adequate or good. Affect was appropriate. There was no homicidal or suicidal ideation. A November 1994 report notes that he was somewhat anxious, and that he reported being in a stressful job. In August 1995, he reported that he had been transferred to a new job, and that he was very pleased about it because it was less stressful and more rewarding. See also May 1996 report (noting that he reported that he enjoys his job). In September 1996, he complained about increased stress after taking on a part-time job in addition to his full-time job and National Guard duties. Overall, he was provided with medications that included Elavil, Trazodone, Zoloft, and Ambien for insomnia. His diagnoses included dysthymia, depression, and anxiety disorder NOS (not otherwise specified). 

VA treatment reports show that beginning in 1994, the Veteran complained of symptoms that included anxiety, depression, low energy, and poor sleep. He did not have suicidal or homicidal ideation. 

A May 1999 VA examination report shows that he complained of sleep difficulties and financial problems. He denied suicidal ideation. He has worked for VA since 1983 and he enjoys his job. He occasionally visits his parents, with essentially no other socializing. Speech was within normal limits with regard to rate and rhythm. He was rather dysphoric. Mood was depressed. There was no gross impairment of memory. He was oriented in all spheres. He did not report hallucinations. No delusional material was noted. Insight and judgment were adequate. The Axis I diagnosis was dysthymic disorder. 

A March 2000 report notes that the Veteran had not been seen in over three years. Thereafter, reports dated in 2000 report notes complaints of animosity towards VA, poor sleep, and irritability. He participated in group therapy. He denied hallucinations or delusions. Cognition was intact. Judgment and insight were “fairly good.” There was a notation of “some obsessive-compulsive features,” but that it was not clear if this was part of his Axis I diagnoses (anxiety and depression). The Veteran has depression with significant insomnia. The Veteran reported that he had been counseled by his employer for snapping at people. He was noted to have few, if any, intimate relationships. Speech was clear or had a regular rate and rhythm. There was no homicidal or suicidal ideation. There were no psychotic signs or symptoms. He complained that he was angry all the time. Judgment was fair and adequate, or good. Insight was poor, or good. Cognition was grossly intact. He works full-time at VA. He was started on Mirtazapine. 

A lay statement from L.H., dated in August 2001, shows that an acquaintance of the Veteran states that he has attended an anger management course, that he takes medications related to this course, and that he has “mood swings more consistent with stress.”

A lay statement from A.M., dated in August 2001, shows that a soldier who served with the Veteran during his second period of active duty states that he was a conscientious worker and a happy person prior to his service in Desert Storm. After his service, he was very angry, unhappy, and controlling, and he lost weight. In June 2010, a second statement was received from this same author. 

Reports dated in August 2001 show that the Veteran was not observed to have PTSD symptoms. He was last seen in October 2000. He denied having depression. Thought process was logical and goal directed. Speech had a normal rate, tone, and volume. There was no homicidal or suicidal ideation, and no audio or visual hallucinations. There were no gross cognitive deficits. Mood was dysphoric with restricted affect. He had good hygiene. He was to be given a trial of Venlafaxine. 

An April 2002 report notes that the Veteran reported having numerous work-related problems since he filed an EEO case in 1998. Various events have occurred since then that have culminated in the Veteran receiving a proposed removal letter. It was noted that he described multiple situations “that could be real, but which alternatively-could represent paranoia.” The examiner stated that the “chief differential is occupational circumstances vs. delusional disorder.” He related most of his problems to problems with his service chiefs at his job. He stated that he did not feel that he was getting equal opportunities on the job. He has three grown children he sees regularly. He denied depression and hallucinations. He has known his fiancé for four years. His medications were Risperidone and Paxil. The assessment was paranoia in a patient with anxiety. An associated statement from a VA psychologist, dated in April 2002, indicates that the Veteran was recommended for three days off from work due to psychiatric symptoms. A May 2002 report notes that he reported it was his last day at his job. He denied homicidal or suicidal ideation. The diagnosis was “probably delusional.”

In July 2003, the Veteran signed a contract for a VA PTSD treatment program. 

A lay statement, received in September 2004, shows that a former superior officer of the Veteran states that he has little patience, is more forgetful and that he appears to be easily angered. 

In November 2006, the Veteran reported that he was going through a second divorce. 

Lay statements from B.S., and H.P., received in June 2010, show that the Veteran was thought to be a hard worker prior to his service in Desert Storm. Thereafter, he became angry, bitter, rude, and was hard to be around. His marriage fell apart. 

Between 2007 and 2011, depression screens were consistently negative. See July 2013 VA opinion. 

A VA mental disorders DBQ, dated in February 2013, notes the following: The Veteran does not have, and has never had, a mental disorder. He has worked full-time as a lock operator since September of 2008. Prior to this, he worked for a Federal employer for four years, with a prior history of 23 years of employment at VA. He is not currently undergoing mental health treatment and his last mental health treatment was in 2004. He is not taking psychotropic medications. There is no relevant legal or behavioral history. He enjoys talking to his aunt. At times, he goes bowling and to movie theatres with his girlfriend. The examiner indicated that the Veteran did not have any of the listed symptoms on the examination form, to include depression, anxiety, chronic sleep impairment, panic attacks, memory impairment, suicidal ideation, and persistent delusions and hallucinations. The examiner stated that the Veteran does not currently meet diagnostic criteria for any mental health disorder. He has been diagnosed with several conditions including depression and anxiety in the past. The Veteran has not been in mental health treatment since 2004. In reviewing prior treatment notes and evaluations there appears to be personality traits which impact the Veteran’s overall approach and response to life situations, particularly work environments. These do not meet the criteria for a disorder at this time. 

A VA mental disorders DBQ, dated in October 2014, notes the following: The Veteran has been married and divorced 3 times. His last marriage ended in 2007 after 8 years. He has two adult children, both of whom live near him. He has nine grandchildren. He states his grandchildren don’t want to be around him because he disciplines them. He reported having a Bachelor of Science in management. He had 23 years employment with VA, performing equipment repair, before retiring in 2002. He worked for several years at the post office, and then he worked for a Federal agency. He has been unemployed for three to four years. He has not received treatment since July 2013. The Veteran expressed considerable anger during the interview, stating that he’s always tired, always irritable, and that he’s been like this for the last 20 years. The Veteran’s symptoms are productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The diagnosis was other specified personality disorder, mixed personality features. See also supplemental opinions, dated in January and March of 2015. 

A report from A.I., M.D., dated in May 2017, notes the following: The Veteran was married and divorced three times. He has two adult children and nine grandchildren. Following separation from service in 1991, he completed college. He received a degree in management. He worked for many years in food services and food service equipment repair. He retired after 23 years, in 2002. Thereafter, he has a history of employment for a few years in entities such as the post office. He has been unemployed for about four years. There is no information as to any kind of legal or criminal problems or problems related to abuse of any substances. Psychiatric symptoms have included anger, irritability, inconformity, fatigue, with a history of intermittent treatment. Dr. A.I. indicated that he disagreed with the diagnosis of personality disorder in the February 2013 VA DBQ, essentially stating there was no documentation of any type of negative childhood experiences that led to development of a personality disorder, and that the Veteran’s global anger can happen in a number of different psychiatric conditions. The Veteran was noted to have some difficulties in his functioning related to a number of paranoid thoughts, an enduring personality change due to catastrophic stressors, with hostility, a mistrustful attitude, social withdrawal, and not being able to hold his full-time employment. 

In June 2017, the Veteran submitted an article on anger disorders which states that they are pathologically aggressive, violent or self-destructive behaviors symptomatic of and driven by an underlying and chronically repressed anger or rage. Anger disorders result primarily from the long-term mismanagement of anger. They arise from a failure to recognize and consciously address anger as it arises, before it becomes pathological and dangerous, starting in childhood. 

VA progress notes, dated beginning in 2018, note depression. The Veteran reported that he walks around his neighborhood for exercise. He reported using Citalopram for insomnia and said that it keeps him from hurting himself or somebody else. He was also noted to use Mirtazapine for sleep, and Prazosin. He complained of nightmares, heightened arousal, and social avoidance. He complained that he felt unsupported by VA. He reported isolating himself to prevent his irritability from harming himself, others, or his relationships, but that he had no current thoughts, plans or intentions of self-harm. He reported thoughts of harming others occurring nearly every day, but he said that they are situational and never towards the same person each time; he reported no intent to harm anyone or plan to do so at this time. One examiner stated, “In my professional opinion, imminent risk for self or other harm is deemed to be low and can be managed on an outpatient basis. The findings note that he was alert, oriented times four, pleasant and cooperative. He was well-groomed and appropriately dressed for the season. He described his mood as “irritable”; affect was mood congruent. Thoughts were logical, goal-directed, and rational. Speech was spontaneous and verbal. Insight and judgment appeared to be intact. Concentration was within normal limits. There was a notation that he endorses passive suicidal and homicidal ideation, but he has no plan or intent. Attention and concentration were normal. Speech was normal with non-pressured rate, tone, and volume. Thought process was linear and goal directed. 

A VA mental disorders DBQ, dated in September 2019, notes the following: The Veteran reported that he lives alone. He has a person he sees occasionally. He spends his time walking, but walking is painful. He notices that he is increasingly isolated. He keeps in touch with his brother, but he is irritated by him. He has two adult children, and he talks to them on the phone although they are busy. He occasionally goes fishing with a close friend. He does chores and runs errands without assistance. He occasionally attends church with his daughter or his neighbor. His family complains that he does not associate with them, and that he is frequently irritable. He stopped working in 2015. He has 37 years of Federal service, with a reported history of a few disciplinary problems when he worked at VA. He has active prescriptions for mirtazapine, citalopram, and nortriptyline. He is not currently receiving any psychotherapeutic treatments for PTSD. He estimated sleeping approximately two to three hours at a time, approximately four to five hours per night. He wakes up due to nightmares and headaches, with nightmares occur at least two times per week. He reported difficulties with concentration and memory. He said that he has occasional thoughts of suicide. During the examination, conversation was fluid and logical. No speech impairments were noted. There was no evidence of delusional or disorganized thought content. The examiner indicated that the Veteran’s symptoms include depressed mood, anxiety, chronic sleep impairment, mild memory loss, and flattened affect, and that they cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. The diagnosis was PTSD. The examiner indicated that the Veteran’s symptoms are productive of occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication. 

Applications for increased compensation based on unemployability (VA Form 21-8940), received between May 2003 and June 2018, show that the Veteran indicated that he worked for VA between 1980 and August 2002, followed by three brief periods of employment until June 2003, followed by full-time work with a Federal employer between January 2010 and December 2015.

The Board finds that the Veteran is not a credible historian. The Veteran’s personnel files from service with the National Guard include an undated memorandum with the subject “fraud enlistment,” which notes that evidence has been obtained that supports a deliberate material misrepresentation, omission, or concealment of facts or conditions, which if known at the time of enlistment, would have resulted in rejection of enlistment. It was determined that the Veteran entered the Armed Forces under “fraud pretense.” However, he was not separated from service based on these findings. A memorandum, dated in August 2001, states that a Board found that the Veteran was guilty of misconduct and that he should be discharge with an Under Honorable Conditions Discharge (General Discharge). That same month he was separated from service with a General Discharge. Associated documents note that the Veteran was determined to have abused illegal drugs in July 2000 and committed disrespect towards a superior commissioned officer in November 2000. See Report of Proceedings by Investigating Officer/Board of Officers (DA Form 1574), dated in April 2001; Involuntary Separation Board, dated in February 2001. Furthermore, although the Veteran reported to the October 2014 VA examiner that he had been unemployed for three to four years, and to Dr. A.I. (in May 2017) that he had been unemployed for “about four years,” this is significantly inconsistent with the other evidence of record, which indicates that he worked full-time between January 2010 and December 2015. See e.g., Veteran’s Applications for increased compensation based on unemployability (VA Form 21-8940), received in January 2018; February 2013 and September 2019 VA mental disorders DBQs. There are also multiple notations indicating that he was motivated by the need for financial gain. See e.g., VA progress notes, dated in 2000 (noting complaints repeated attempts to get compensation that have been denied, and that “others who suffered [the] exact same circumstances as he is are receiving compensation” with the examiner indicated that it was not clear if his recognition and diagnosis were related to compensation or treatment, and complaints about his medical bills). Accordingly, the Veteran is found not to be a credible historian. Caluza v. Brown, 7 Vet. App. 498, 511 (1995). 

With regard to the criteria in effect prior to November 7, 1996, the Veteran has been divorced three times. He was most recently divorced in about 2007. He has also reported having poor relationships with some family members. While there is therefore some evidence of the criteria required for a 70 percent rating, specifically, evidence that the Veteran has some difficulty establishing and maintaining favorable relationships with people, the Board notes that under 38 C.F.R. § 4.126 (b) when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 

Following his most recent divorce, there is no medical evidence to show that the Veteran has severe impairment in living alone or performing his activities of daily living. VA progress notes show that there are significantly large gaps in treatment, with a noted history that included anxiety and PTSD, but little to no relevant complaints or findings of record to show psychiatric symptomatology, from approximately 1997 to March 2000, October 2000 to August 2001, and 2004 to 2012. There is some fairly recent evidence of suicidal thoughts and hostile thoughts towards others. However, he was found to be at low imminent risk for self or other harm. There is no evidence of suicidal or homicidal plan or intent, to include an intent or plan to harm others. He has been noted to go fishing with a friend, to regularly take walks, and to do chores and run errands without assistance. He occasionally attends church with his daughter or his neighbor. The findings as to such things as speech, insight, judgment, memory, and concentration, are not shown to have been severely impaired. 

With regard to the Veteran’s employability, the evidence indicates that he worked for VA between 1980 and August 2002, followed by three brief periods of employment until June 2003, followed by full-time work with a Federal employer between January 2010 and December 2015, after which he retired. There is no objective evidence during the time period in issue to show that the Veteran’s employability was impacted by his PTSD to the required degree, nor does the evidence warrant such a conclusion. There were no findings of severe impairment in social and industrial adaptability as a result of PTSD. 

In summary, there is insufficient evidence of psychoneurotic symptoms of such severity and persistence such that the criteria for a 70 percent rating are shown to have been met. Based on the foregoing, the Board finds that the Veteran’s social and industrial adaptability is not shown to be severely impaired. Accordingly, the Board concludes that the Veteran’s PTSD is not manifested by symptomatology that approximates, or more nearly approximates, the criteria for an evaluation in excess of 50 percent under DC 9411, as in effect prior to November 6, 1996. See 38 C.F.R. § 4.7.

With regard to the criteria effective in effect as of November 7, 1996, overall, there is little or no evidence of suicidal ideation, obsessional rituals, speech intermittently illogical, obscure, or irrelevant, near continuous panic or depression affecting the ability to function independently, appropriately and effectively, spatial disorientation, neglect of personal appearance and hygiene, or an inability to establish and maintain effective relationships. The October 2014 VA examiner concluded that the Veteran’s symptoms were productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. This most closely corresponds to no more than a 30 percent evaluation under the General Rating Formula. 38 C.F.R. § 4.130. The September 2019 VA examiner concluded that the Veteran’s symptoms are productive of occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication. This most closely corresponds to no more than a 10 percent evaluation under the General Rating Formula. 38 C.F.R. § 4.130. 

For both criteria, to the extent that Dr. A.I. indicated that the Veteran is unable to work due to his symptoms, this is afforded no probative value, as it is apparently based on the Veteran’s verbal reports of his symptomatology, and he has been found not to be a credible historian. In addition, this conclusion is significantly inconsistent with the other evidence of record. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997).

In summary, the evidence is insufficient to show that the Veteran has such symptoms as suicidal ideation with plan or intent, obsessional rituals, defects in speech, near-continuous panic or depression which affect his ability to function independently, appropriately, and effectively; impaired impulse control (other than as noted), spatial disorientation, neglect of personal appearance and hygiene, or difficulty in adapting to stressful circumstances, nor are there other psychiatric symptoms shown to have resulted in such impairment, such that a 70 percent rating is warranted. See 38 C.F.R. § 4.130; Vazquez-Claudio. Accordingly, an initial evaluation in excess of 50 percent is not warranted. 

In reaching this decision, the Board has afforded little probative value to the February 2013 VA DBQ, and associated supplemental opinions, particularly insofar as they indicate that the Veteran does not have an Axis I diagnosis. Madden.

The Board has considered the Veteran’s statements, and the lay statements. The Board is required to assess the credibility and probative weight of all relevant evidence. McClain v. Nicholson, 21 Vet. App. 319, 325 (2007). In doing so, the Board may consider factors such as facial plausibility, bias, self-interest, and consistency with other evidence of record. Caluza v. Brown, 7 Vet. App. 498, 511 (1995); Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007). The Board may consider the absence of contemporaneous medical evidence when determining the credibility of lay statements but may not determine that lay evidence lacks credibility solely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Personal interest may affect the credibility of the evidence, but the Board may not disregard testimony simply because a claimant stands to gain monetary benefits. Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

The Board acknowledges the Veteran’s belief that his symptoms are of such severity as to warrant an increased evaluation. However, the Veteran has been found not to be a credible historian. The lay statements and the submitted article have also been considered. Disability ratings are made by the application of a schedule of ratings which is based on average impairment of earning capacity as determined by the clinical evidence of record. Therefore, the Board finds that the medical findings, which directly address the criteria under which the disability is evaluated, are more probative than the Veteran’s assessment of the severity of his disability, and the lay statements and the submitted article on anger disorders. The examinations also took into account the Veteran’s competent (subjective) statements with regard to the severity of his disability. 

In reaching this decision, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against the Veteran’s claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

 

MATTHEW W. BLACKWELDER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T.S.E., Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.